Robert A. SPANNER, Plaintiff–Appellant,

v.

UNITED AIRLINES, INC., Defendant–Appellee.

No. 98–15772.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 10, 1999.

Filed June 1, 1999.

Robert A. Spanner, pro per, Menlo Park, California, for the plaintiff-appellant.

Donald B. MacDougall, Kenney & Markowitz, San Francisco, California, for the defendant-appellee.

Before: O'SCANNLAIN, WARDLAW, and FLETCHER, Circuit Judges.

FLETCHER, Circuit Judge:

Robert A. Spanner sued United Airlines, Inc. ("United") for $7418.90, the full value of a lost piece of luggage and its contents. United argued that its liability was limited to $9.07 per pound of luggage lost pursuant to the Warsaw Convention, an international treaty.[1] The district court agreed with United. We reverse.

*Facts and Proceedings Below*

On April 24, 1997, appellant Spanner and his wife returned to San Francisco International Airport (SFO) after a two-week trip to New Zealand. Spanner had traveled on Air New Zealand between Auckland and Los Angeles. Spanner's Air New Zealand "claim checks" did not contain his ticket number, the number and weight of his bags, or a statement that his travel was subject to the rules of the Warsaw Convention.[2]

At Los Angeles International Airport, Spanner and his wife deplaned, took possession of their luggage, cleared customs, and then checked their luggage on appellee United Airlines to San Francisco. Although the "claim checks" for the luggage remained the same as those issued by Air New Zealand, Spanner also received from United a ticket called a "Plane Ticket and Baggage Check" ("PTBC"). United's form PTBC contains a complete statement of the limited liability provisions of the Warsaw Convention. United alleged that a hand-written notation of the weight and number of the checked bags typically would appear on the PTBC or on the boarding pass. Neither Spanner nor United placed into evidence his actual United PTBC or his boarding pass. Spanner rightly points out that some or all of this documentation is taken from passengers upon boarding the plane. The district court found it "impossible" to determine whether any notation of the weight or number of Spanner's bags was ever made on either his PTBC or his boarding pass. No such documentation was made on the Air New Zealand "claim checks."

When Spanner arrived at SFO, he could not find his checked luggage on the baggage carousel. A baggage clerk informed Spanner that his bags had arrived on an earlier United flight and directed Spanner to a cluster of bags in the baggage terminal. Spanner was able to find three of his four checked bags in the cluster, but he could not find the fourth. The baggage clerk checked his computer and informed Spanner that all four bags had indeed arrived, but on an earlier flight.

United searched for the missing bag for several weeks without success. Spanner subsequently filed a claim with United for approximately $8500 (he eventually sued for slightly over $7400), the alleged value of the lost bag and its contents. United refused to reimburse the claimed amount.

Spanner filed suit in San Mateo County Municipal Court for the loss of his bag on June 4, 1997. United removed the case to federal district court for the Northern District of California on July 9, 1997, under 28 U.S.C. §§ 1331 and 1441. United claimed that the liability was governed by the Warsaw Convention and thereby limited to $9.07 per pound of lost luggage. Spanner argued under the Warsaw Convention that United could not limit its liability because

1. Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, 3014, T.S. No. 876 (1934), note following 49 U.S.C. § 40105.

2. Spanner produced these "claim checks" as evidence. They appear to be the small stickers or tags held by a passenger, usually stapled inside a ticket jacket, or the corresponding stickers or tags that are attached to any checked luggage. As most travelers have experienced, some airlines compare the two stickers or tags before allowing anyone to leave the baggage carousel area with luggage received at a baggage terminal. Spanner did not place into evidence his Air New Zealand plane ticket.

United had failed to issue Spanner a proper "baggage check" indicating the weight and number of Spanner's bags. Spanner and United both moved for summary judgment.

The district court granted United's motion for summary judgment. It was undisputed, based on an examination of an exemplar passenger ticket, that United had provided Spanner with notice of the liability limitations under the Convention. But the court held that United failed to show that it had noted on the "baggage check" the weight and number of Spanner's bags. The court nonetheless concluded that United could avail itself of limited liability because "technical failures to comply with the Warsaw Convention will not preclude applying the limitations on liability when the omissions have not prejudiced the claimants" (quoting *Abbaa v. Pan American World Airways, Inc.*, 673 F.Supp. 991, 993 (D.Minn.1987)). Because Spanner was given notice of the Warsaw Convention, and because United had agreed to pay Spanner as if his bag had weighed the maximum permitted for claimed baggage (70 pounds), the district court concluded that Spanner had not been "prejudiced" by the failure to note the weight and number of bags. The district court granted United summary judgment for limited liability based on an assumed weight of 70 pounds, or $634.90. Spanner appealed.

## Discussion

The Warsaw Convention was drafted at international conferences in Paris in 1925 and Warsaw in 1929. The United States became a signatory in 1934. More than 120 nations now adhere to it. *See Trans World Airlines, Inc. v. Franklin Mint Corp.*, 466 U.S. 243, 246–47, 104 S.Ct. 1776, 80 L.Ed.2d 273 (1984). A central quid pro quo of the Convention is presumptive liability for the loss of cargo (Article 18), but a low limit on carrier liability calculated by the weight of the cargo (Article 22). *See Franklin Mint*, 466 U.S. at 246–47. In

order to invoke the limited liability of the Convention, a carrier must meet several requirements. Among them, and relevant here, are that the loss must be during "international transportation" (Article 1), and that any transportation of baggage must include a "baggage check" given to the passenger that includes several particular items of information (Article 4).

■ The parties agree that Spanner's bags were lost during "international transportation," as defined by the Convention, even though the loss was during a routine shuttle flight from Los Angeles to San Francisco. Article 1(1) defines "international transportation" as, *inter alia*, transportation between "two High Contracting Parties." Spanner traveled from San Francisco to New Zealand and back, and the United States and New Zealand are both High Contracting Parties to the Warsaw Convention. United States Department of State, *Treaties in Force* 329–30 (1997). Spanner's shuttle flight from Los Angeles to San Francisco was still part of his "international transportation" because, under Article 1(3), "[t]ransportation to be performed by several successive air carriers shall be deemed, for the purposes of this convention, to be one undivided transportation, if it has been regarded by the parties as a single operation...." Article 1(3) provides further that transportation "shall not lose its international character merely because one contract or a series of contracts is to be performed entirely within a territory subject to ... [one] High Contracting Party."

■ Article 4(1) of the Convention states that for the transportation of baggage "the carrier must deliver a baggage check," and Article 4(3)(f) provides that the "baggage check shall contain" the "number and weight of the packages." If a carrier fails to deliver such a baggage check, Article 4(4) provides that "the carrier shall not be entitled to avail [it]self of those provisions of the convention which exclude or limit [its] liability."[3]

3. The relevant text of Article 4(4) is:

[I]f the carrier accepts baggage without a baggage check having been delivered, or if

██ Over the last decade, the Supreme Court has on several occasions interpreted provisions of the Warsaw Convention, primarily relating to personal injuries. *See El Al Israel Airlines, Ltd. v. Tseng,* —— U.S. ——, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999); *Zicherman v. Korean Air Lines Co.,* 516 U.S. 217, 116 S.Ct. 629, 133 L.Ed.2d 596 (1996); *Eastern Airlines, Inc. v. Floyd,* 499 U.S. 530, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991); *Chan v. Korean Air Lines, Ltd.,* 490 U.S. 122, 109 S.Ct. 1676, 104 L.Ed.2d 113 (1989). The starting point for interpretation is the text. *See El Al Israel Airlines,* —— U.S. at ——, 119 S.Ct. at 671 ("Our inquiry begins with the text of Article 24...." ); *Eastern Airlines,* 499 U.S. at 535 ("When interpreting a treaty, we begin with the text of the treaty and the context in which the written words are used.") (internal quotation marks omitted). The Supreme Court in *Chan* emphasized the importance of careful attention to text: "We must thus be governed by the text—solemnly adopted by the governments of many separate nations—whatever conclusions might be drawn from the intricate drafting history that petitioners and the United States have brought to our attention. The latter may of course be consulted to elucidate a text that is ambiguous. But where the text is clear, as it is here, we have no power to insert an amendment." 490 U.S. at 134.

We find that United simply cannot overcome the clear text of Article 4. Indeed, it would be difficult to imagine textual commands of greater clarity. A baggage check "shall contain" a notation of the weight and number of bags, and when this specific requirement is not met, a carrier "shall not" be entitled to avail itself of limited liability. The Supreme Court in *Chan* even remarked, in dicta, on the clari-

ty of the Article 4(4) sanction for failure to meet the particular baggage check notation requirements of Article 4(3). *See Chan,* 490 U.S. at 131–34. To read into Article 4 a condition that the passenger can recover full value only if the passenger is "prejudiced" by the failure is, under *Chan,* an impermissible amendment of Article 4.[4]

United succeeded in the district court by relying on cases that have interpreted the technical requirements of the Warsaw Convention as variable depending on the prejudice to, or the sophistication of, the passenger or shipper. *See Republic National Bank of New York v. Eastern Airlines,* 815 F.2d 232, 237 (2d Cir.1987); *Abbaa v. Pan American World Airways, Inc.,* 673 F.Supp. 991, 993 (D.Minn.1987); *Martin v. Pan American World Airways,* 563 F.Supp. 135 (D.D.C.1983). But all of these cases preceded the Supreme Court's decision in *Chan.* After *Chan,* any flexibility in construing the clear requirements of the Convention is difficult to defend. We note that even where a distinction is made between unsophisticated and sophisticated passengers and shippers, the typical airline passenger still retains the benefits of strict enforcement of the Convention. *See, e.g., Siben v. American Airlines, Inc.,* 913 F.Supp. 271, 277 (S.D.N.Y.1996) (acknowledging flexibility in cases involving sophisticated passengers and shippers, but stating that "[c]ourts in this Circuit and in New York State, when applying the Convention to non-commercial passengers, have interpreted the Convention strictly"). But we do not rely on this distinction because the clear text forecloses limited liability here regardless of the sophistication of the passenger or shipper.

the baggage check does not contain the particulars set out at (d), (f), and (h) above, the carrier shall not be entitled to avail himself of those provisions of the convention which exclude or limit his liability.

**4.** Article 4 has since been amended by parties to the Warsaw Convention and no longer in-

cludes the requirement of a weight and number of bags notation. *See* Montreal Protocol No. 4, ratified by the United States Senate on September 28, 1998, S. Exec. Rep. No. 105–20 (1998). Neither Spanner nor United argued that Montreal Protocol No. 4 affects this case in any way.

We therefore reverse the grant of summary judgment for United. Because we base our holding on the improper baggage check, we need not reach any issues regarding wilful misconduct by United in the treatment of Spanner's luggage.

**REVERSED.**