Maria V. CRUZ, for herself and as representative of Gustavo Cruz and Joaquin Rodriguez, minors, et al., Appellants,

v.

AMERICAN AIRLINES, INC., Appellee.

Nos. 98–7186, 98–7187.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 9, 1999.

Decided Oct. 12, 1999.

Rehearing and Rehearing En Banc Denied Nov. 26, 1999.\*

Leonard N. Bebchick argued the cause and filed the briefs for appellants.

Carroll E. Dubuc argued the cause for appellee. With him on the brief was John E. Gagliano.

Before: WALD, SILBERMAN, and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

\* Former Circuit Judge Wald was the third member of this panel.

SILBERMAN, Circuit Judge:

Appellants seek reversal of a decision of the district court limiting their recovery for lost luggage to the amount set forth in the Warsaw Convention, and dismissing their common law fraud and deceit claims. We vacate in part the district court's entry of judgment against appellants. We hold that American Airlines' failure to comply with the baggage weight notice provisions of the Convention precludes it from relying on the Convention's liability limitations, but that appellants' common law claims are preempted by the Warsaw Convention.

## I.

On December 21, 1995, fourteen members of the Cruz family arrived at National Airport, having purchased tickets for travel on American Airlines from Washington through Miami and on to their ultimate destination of Santo Domingo. Prior to boarding, each family member checked two suitcases, and was issued a baggage claim stub for each piece of luggage. These claim stubs did not indicate the weight of the suitcases.

The next day, after a delay in Miami, the Cruzes arrived in Santo Domingo. Unfortunately, five of their suitcases did not. Informed that plane weight restrictions had forced American to leave behind some of the baggage originally checked on their Miami–Santo Domingo flight, the Cruzes were told that the five suitcases would be shipped to Santo Domingo on a flight later that day. Upon their return to the airport, however, the bags were still missing (why does this sound so familiar?). The Cruzes promptly filed a missing property report with American; they also profess to have filled out, at American's request, more detailed "Declarations of Lost Property" indicating the contents and estimated value of each lost suitcase. American claimed that it did not receive any Declarations from the Cruzes for over 40 days

after the Cruzes lost their luggage, and denied the Cruz family's lost-luggage claims on the ground that they did not comply with American's requirement, stated in its contract of carriage, that Declarations be filed within 30 days of the date of the loss of baggage (the "30–Day Rule").

The Cruzes sued American asserting a federal cause of action under the treaty popularly known as the Warsaw Convention,[1] which governs claims arising out of the international carriage of persons and property by air. They alleged that they had submitted the required Declarations within the 30 days prescribed by the contract of carriage. In any event, appellants argued, the 30–Day Rule itself had been unlawfully applied to them. It was not mentioned in the tariffs American is required by law to file with the Department of Transportation for its Caribbean flights, *see* 49 U.S.C. § 41504 (1997), and it was also, according to appellants, contrary to the express and exclusive lost-luggage provisions set forth in the Warsaw Convention. *See* Warsaw Convention Art. 26(2). Besides seeking the fair value of their lost luggage, the Cruzes sought a declaratory judgment that American's application of the 30–Day Rule was unlawful, and an injunction preventing American from applying the Rule to passengers on its Caribbean flights in the future. The Cruz family also invoked the district court's supplemental jurisdiction to assert claims for damages against American for fraud and deceit under Maryland law, alleging that American had a practice of intentionally misapplying the 30–Day Rule against international passengers to discourage lost-luggage claims.

Conceding for the purposes of litigation that it had both lost the Cruzes' luggage and improperly denied their lost luggage claim, American moved to dismiss all of appellants' claims in excess of the compen-

---

**1.** *See* Convention for the Unification of Certain Rules Relating to International Transportation By Air, Oct. 12, 1929, 49 Stat. 3000,

T.S. No. 876, note following 49 U.S.C. § 40105 (1997).

sation provisions set forth in Article 22(2) of the Warsaw Convention, which limits air carrier liability to $9.07 per pound of luggage lost or damaged in the course of air transportation. The Cruzes responded that American's failure to state the weight of each suitcase on the baggage stubs, as required by Article 4(3)(f) of the Convention, precluded American from relying on the Convention's liability limitations. The district court ruled in favor of American and limited appellants' recovery to $9.07 per pound, using the default "deemed weight" set forth in American's tariffs to calculate damages when the weight of a suitcase was disputed or not known. *See Cruz v. American Airlines, Inc.*, Civil Action No. 96–02817, Mem. Op. at 16–17 (D.D.C. Oct. 24, 1997). The court held that, as American's concessions resolved appellants' lost-luggage claims, the Cruzes no longer had standing to challenge American's alleged misapplication of the 30–Day Rule, *see id.* at 25–26, and that appellants' common law claims were preempted by the Airline Deregulation Act, 49 U.S.C. § 41713(b)(1) (1997). *See id.* at 35. After filing a motion for reconsideration and pursuing other procedural avenues in the district court—including filing a separate class action raising similar substantive claims[2]—the Cruzes appealed.

## II.

As noted, the Cruzes seek relief under the Warsaw Convention, which governs claims arising from international air transportation. The primary issue in this case is simply whether American's liability for losing the Cruzes' baggage is limited by Article 22(b) of the Treaty to $9.07 a pound. Appellants argue no; American did not comply with that Article because the Treaty's liability limitation is conditioned on a carrier's compliance with Article 4(4) which states that:

> if the carrier accepts baggage without a baggage check having been delivered, or if the baggage check does not contain the *particulars* set out at [Article 4(3) ](d), (f) *and* (h) above, the carrier shall not be entitled to avail himself of those provisions of the Convention which exclude or limit his liability. (Emphasis added.)

▮ Article 4(3)(f) requires carriers to include the "number and weight of the packages" on its luggage tickets. It is undisputed that American did not do so. Appellants therefore contend that American has lost its Warsaw Convention damage limitation and that they are entitled to recover the full value of the luggage.

The district court accepted American's argument that Article 4(4) does not oblige a carrier to comply with all the "particulars" of (d), (f), and (h) of that Article; a carrier loses its liability limitation protection only if it complies with none of the particulars. While acknowledging that "no other courts" shared in its reading of Article 4(4), Mem. Op. at 11, the district court reasoned as follows:

> Article 4(4) directs that "if the baggage check does not contain the particulars set out at (d), (f) *and* (h) above, the

---

**2.** This appeal actually consolidates two cases. Both cases—a civil suit filed by five members of the Cruz family and a class action subsequently filed by the same named plaintiffs—arise out of the same set of facts and raise essentially identical substantive issues. Appellants had moved to amend their complaint as a class action and that motion was pending when American moved for summary judgment; because it ruled in favor of American at summary judgment, the district court dismissed appellants' motion to amend as moot. The Cruzes filed a separate class action (identical to their motion to amend that was deemed moot by the district court), the ultimate dismissal of which was largely predicated upon the district court's substantive rulings in the original suit. Since we vacate the district court's summary judgment order in the original suit, appellants' complaint is restored to its prior status, with their motion to amend their complaint as a class action still pending before the district court. Accordingly, we need not address appellants' procedural objections to the district court's disposition of the two cases after it ruled against the Cruzes at summary judgment.

carrier shall not be entitled to avail himself of those provisions of the convention which exclude or limit his liability." The Court notes that the provision employs the conjunction "and" rather than "or." In the ordinary case, the word "and" should retain its conjunctive meaning.... Considering the conjunctive meaning of the word "and," the plain language of this provision directs that liability is lifted only if all three "particulars" are missing.

*Id.* at 10–11 (emphasis in district court's opinion) (citations omitted). As the disputed luggage tickets contained two of the three "particulars," the district court concluded that American's failure to record the weight of each suitcase did not preclude the carrier's recourse to the Convention's liability limits. *Id.* at 11.

We do not agree. Although we recognize that the district court's interpretation is linguistically possible, we do not think it is a reasonable construction. It is rather clear to us that the word "and" means that Article 4(4) of the Convention obliges a carrier to comply with each of the three particulars.

American claims that appellants were hardly prejudiced by its failure to weigh the pieces of baggage and record the specific weights on the baggage tags because its practice was to weigh (and charge extra) only for bags that exceed 100 pounds.[3] All bags on which no extra charge is imposed are deemed to weigh 100 pounds. That is simply another way of arguing that Article 4(3)(f)'s requirement makes little real sense. There is no apparent purpose in the requirement that the carrier actually weigh each bag and record the weight on the ticket, so long as a carrier's deemed-weight rules favor its passengers. Still the language of the Convention is unyielding and we have no warrant to dispense with portions we might think purposeless. As the Supreme Court has noted in its interpretations of the Warsaw Convention, "where the text is clear, we have no power to insert an amendment." *Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122, 134, 109 S.Ct. 1676, 104 L.Ed.2d 113 (1989).

We therefore reject the reasoning employed in *Martin v. Pan American World Airways, Inc.*, 563 F.Supp. 135 (D.D.C. 1983), relied upon by American and discussed at length by the district court. Mem. Op. at 8, 12–15. In that case, as well as ours, a default "deemed weight" was established in the airline's tariffs to "provide[ ] an alternative means of fixing the amount of liability," and the Martins (like the Cruzes) were made aware of the liability limitations of the Convention and the availability of additional insurance. *Id.* at 140; Mem. Op. at 15. The *Martin* court, explicitly eschewing what it believed to be the "literal reading" of Article 4(4) and looking instead to the Warsaw Convention's "primary purpose" of limiting air carrier liability, held that an "airline's failure to record the weight of [a passenger's] luggage is a technical and insubstantial omission ... which should not act to extend the airline's liability." *Martin*, 563 F.Supp. at 139, 141. But calling the requirement technical does not reduce its obligatory force—if a carrier wishes to assert the Convention's liability limitations.

American, trying another tack, argues that the need for "uniformity" in construing treaties authorizes us to ignore the requirements of Article 4(4). To be sure, several courts have done so, *see, e.g., Republic Nat'l Bank of New York v. Eastern Airlines, Inc.*, 815 F.2d 232, 238 (2d Cir. 1987); *Abbaa v. Pan Am. World Airways, Inc.*, 673 F.Supp. 991, 992–94 (D.Minn. 1987), although since others have not, *see, e.g., Spanner v. United Airlines, Inc.*, 177 F.3d 1173, 1175–76 (9th Cir.1999); *Tchok-*

---

**3.** The amount of American's default "deemed weight" was initially disputed in the district court, with American claiming that the deemed weight was 70 pounds and the Cruzes alleging that it was 100. At least for the purposes of the Cruzes' suit, American has conceded that it has a 100–pound deemed-weight rule.

*ponhove v. Air Afrique,* 953 F.Supp. 79 (S.D.N.Y.1996); *Da Rosa v. Tap Air Portugal,* 796 F.Supp. 1508, 1509–10 (S.D.Fla. 1992); *Gill v. Lufthansa German Airlines,* 620 F.Supp. 1453, 1456 (E.D.N.Y.1985); *Maghsoudi v. Pan Am. World Airways, Inc.,* 470 F.Supp. 1275, 1278–80 (D.Haw. 1979), it could of course just as easily be argued that uniformity would be served by accepting the Cruzes' position. But even had all federal courts that had considered the issue decided that they had the authority to ignore the Treaty's language, we would not have joined them. If there are circuit conflicts, it is for the Supreme Court to supply uniformity. Nor are we the least bit impressed by American's claim that the subsequent amendment to the Convention by Montreal Protocol No. 4,[4] which entered into force on March 4, 1999, and which eliminated the baggage-weight requirement implicated in this case, should be read as "clarifying" the Convention's prior language. Montreal Protocol 4's luggage ticket provisions clearly *amend* prior law; as such they cannot possibly be given retroactive effect by being labeled a "clarification."

We therefore hold that the district court's interpretation of Article 4(4) was in error, and that American's failure to satisfy the Convention's baggage weight notice provisions precludes it from recourse to the $9.07 per pound limit provided in Article 22(2). Assuming American continues to concede liability on remand, appellants will be entitled to recover for the actual value of their lost luggage.

### III.

The Cruzes also appeal the district court's dismissal of their fraud and deceit claims under Maryland common law. The district court threw out those claims on the ground that they were preempted by the Airline Deregulation Act, 49 U.S.C. § 41713(b)(1). However, American raises an alternative argument—that the Warsaw Convention itself provides the exclusive cause of action for injury arising out of a loss of luggage during international travel. We agree with American's alternative argument, so we need not grapple with what we regard as the more difficult issue of Airline Deregulation Act preemption.

The Warsaw Convention's preemptive impact is much more apparent after the Supreme Court's decision earlier this year in *El Al Israel Airlines, Ltd. v. Tseng,* 525 U.S. 155, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999). Prior to that opinion, there was considerable dispute in the federal courts as to whether the Warsaw Convention—which until 20 years ago was not even understood to create a cause of action, *see In re Korean Air Lines Disaster,* 932 F.2d 1475, 1491–92 (D.C.Cir.1991) (Mikva, J., dissenting)—had a preemptive impact on state law. At one point we declined to take sides on the issue, *see id.* at 1488, but the Supreme Court has mooted our decorous position.

In *Tseng,* a passenger brought a claim under New York tort law after being subjected to an intrusive preboarding security search, alleging that the search caused her emotional and psychological injuries. *See Tseng,* 119 S.Ct. at 667. The Court held that the passenger's claim was preempted, and that recovery for a personal injury sustained in the course of international air travel, "if not allowed under the Convention, is not available at all." *Id.* at 668. The Court relied on Article 24 which provides that, "[i]n cases covered by" Article 17 (the Convention provision governing airline liability for personal injury claims), Article 18 (provision for lost or damaged luggage), and Article 19 (provision for damages caused by delay of passengers or luggage), "any action for damages, however founded, can only be

---

**4.** Montreal Protocol No. 4 to Amend the Convention for the Unification of Certain Rules Relating to International Carriage By Air, signed at Warsaw on October 12, 1929, as amended by the Protocol Done at the Hague on September 8, 1955, reprinted in S.Rep. No. 105–20, pp. 21–32 (1998).

brought subject to the conditions and limits set out in this Convention."[5] The Court explained that Article 24 precludes "a passenger from asserting *any air transit personal injury claims under local law,* including claims that failed to satisfy Article 17's liability conditions," *id.* at 671 (emphasis added). It is clear, then, that the Convention also provides the exclusive cause of action in cases "covered by" Article 18.

■ There is still the question whether Article 18 "covers" appellants' fraud and deceit claims against American. Article 18 of the Convention establishes air carrier liability for damage "sustained in the event of the destruction or loss of ... any checked baggage or any goods, if the occurrence which caused the damage so sustained took place during the transportation by air." Appellants contend that the "occurrence which caused the damage" they sustained was not the loss of their luggage, but American's fraudulent denial of their lost-luggage claim. In other words, the Cruzes argue that the existence of an intervening event—the intentional misapplication of the 30–Day Rule to their claims—subsequent to the loss of their luggage brings their common law claims outside of the Warsaw Convention's area of applicability entirely. *See Tseng,* 119 S.Ct. at 673 ("The Convention's preemptive effect on local law extends no further than the Convention's own substantive scope.").

Here again, *Tseng* is instructive. Article 17, which the Court held preempted Tseng's state law claims, establishes air carrier liability for "damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place

on board the aircraft or in the course of any of the operations of embarking or disembarking." Tseng did not suffer a "bodily injury" under Article 17; nor was the event that gave rise to Tseng's claim an "accident" as that term has been construed by prior cases. *See id.* at 667. Nonetheless, the Court held Tseng's claims to fall within the "substantive scope" of Article 17, and thus were preempted. *See id.* at 667–68. By analogy we think that the "substantive scope" of Article 18 must extend at least as far as to encompass the Cruzes' common law claims. The relationship between the occurrence that the Cruzes claim "caused" their injuries (the misapplication of the 30–Day Rule) is so closely related to the loss of the luggage itself as to be, in a sense, indistinguishable from it. If American had simply asserted *no* reason for denying the Cruzes' lost-luggage claim, and just refused to pay, it is clear that the Cruzes' only remedy would be to sue under the Convention; they would not be able to fashion an additional state cause of action for malice or stubbornness. It follows, we think, that a bad reason for refusing to pay—whether based on an unenforceable rule or not—does not alter the legal situation.

To be sure, if American's agent had hit Cruz with a baseball bat when rejecting Cruz's claim we would not think Cruz's tort claim would be preempted by the Warsaw Convention. Perhaps even a slanderous statement uttered by an American employee in a heated argument over lost luggage would be actionable. But were we to permit the Cruzes' "fraud and deceit" claims to proceed we would tear an obvious hole in the Convention's exclusivity for creative lawyers to exploit—a construction of the Convention that the Supreme Court

---

5. As alluded to above, Article 24 has also recently been modified by Montreal Protocol No. 4, and now states in relevant part that, "[i]n the carriage of passengers and baggage, any action for damages, however founded, can only be brought subject to the conditions and limits set out in this Convention." The Supreme Court has indicated that this modifi-

cation "merely clarifies, it does not alter, the Convention's rule of exclusivity." *Tseng,* 119 S.Ct. at 674. While for the purposes of our analysis we examine the "[i]n cases covered ... by Article 18" language contained in Article 24 at the time of appellants' claim, we see no reason that the modifications to Article 24 would require a different conclusion.

has made clear is to be disfavored. *See id.* at 672.

We are left with appellants' claims for declaratory and injunctive relief, which also are based on American's alleged misapplication of the 30–Day Rule. The district court dismissed these claims on jurisdictional grounds; because American conceded that it had misapplied the 30–Day Rule, and there was little risk of American once again misplacing the Cruzes' luggage, appellants lacked standing to assert a challenge to the Rule. Mem. Op. at 23–26. It also is quite possible that appellants' claims for declaratory and injunctive relief are moot, as American professes to have corrected its erroneous application of the 30–Day Rule to its Caribbean flights. Still, in the event that our remand of the district court's grant of summary judgment breathes life into the Cruzes' claims for declaratory and injunctive relief, we briefly address American's argument that these claims are also preempted by the Warsaw Convention.

 American attempts to frame this issue in its favor by depicting the Cruzes' claims for declaratory and injunctive relief as based on state law. However—while we agree that appellants' complaint is hardly a model of precise pleading—these claims appear to be founded not on local law but on the Warsaw Convention itself; appellants allege that American's application of the 30–Day Rule was in violation of the Convention's express lost-luggage claim notice provisions. *See* Warsaw Convention Art. 26(2). Furthermore, even if appellants' claims *were* made under state law, the Convention preempts only "any action *for damages,* however founded." Warsaw Convention Art. 24. Accordingly, we conclude that this claim, unlike the Cruzes' common law claims, is not preempted by the Warsaw Convention.

\* \* \* \*

We vacate the district court's entry of judgment against appellants in the Cruz family's original suit (No. 98–7186), and remand for proceedings consistent with this opinion. As our order reinstates the Cruzes' complaint to its status at the time of the district court's grant of American's motion for summary judgment, appellants' motion to amend their complaint as a class action remains pending before the district court.[6] We also vacate the district court's dismissal of appellants' class action (No. 98–7187), but note that this claim is essentially duplicative of appellants' pending motion to amend, and that consolidation of these two cases by the district court would appear appropriate.

*So ordered.*

---

**6.** The Cruzes argue that the district court's denial of their motion to amend its complaint as a class action prejudiced unnamed class claimants whose claims expired under the Warsaw Convention statute of limitations during the six-month period between the filing of the motion to amend and appellants' subsequent filing of a class action. However, because appellants' motion to amend remains before the court, the statute of limitations has tolled from the date of filing with respect to the prospective class. *See American Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 551–52, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974).