**Assem BAYAA, and the American–Arab Anti–Discrimination Committee, on behalf of its members and constituents, Plaintiffs,**

v.

**UNITED AIRLINES, INC.; UAL Corporation, Defendants.**

No. CV 02–4368 FMC.

United States District Court, C.D. California.

Oct. 9, 2002.

Peter J. Eliaberg, Benjamin E. Wizner, Los Angeles, CA, Reginald T. Shuford, New York City, Mark D. Rosenbaum, Los Angeles, CA, for Plaintiffs.

Robert S. Span, Paul Hastings Janofsky & Walker, Los Angeles, CA, Clinton H. Coddington, Randolh S. Hicks, Richard G. Grotch, Coddington Hicks & Danforth, Redwood City, CA, for Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS.

COOPER, District Judge.

This motion is before the court on Defendants' Motion to Dismiss (docket # CV 02–4368). The Court deems this matter appropriate for decision without oral argument. *See* Fed.R.Civ.P. 78; Local Rule 7.11. Accordingly, the hearing set for October 21, 2002 is removed from the court's calendar. For the reasons set forth herein, Defendants' Motion is DENIED in part and GRANTED in part.

### I. Plaintiff's Allegations

Plaintiff Assem Bayaa ("Plaintiff Bayaa" or "Bayaa") is an American citizen of Lebanese and Palestinian descent who works full time in Saudi Arabia, but travels to California frequently to visit family and to conduct business. Pls.' Compl. ¶ 7. Defendant United Airlines, Inc./ UAL Corporation ("UAL" or "Defendants")[1] provides one of the most convenient flights on the route that Bayaa "regularly" travels. Pls.' Compl. ¶ 9. Plaintiff American–Arab Anti–Discrimination Committee ("Plaintiff ADC" or "ADC")[2] is a "non-sectarian, non-partisan organization dedicated to defending the rights of people of Arab descent and to combating defamation and

---

1. Defendants indicate in their motion that they were erroneously named as United Airlines, Inc. They are instead United Air Lines, Inc. ("UAL"). Defs.' Mot. Dismiss 1:1–2.

2. Although the organization is entitled the American–Arab Anti–Discrimination Committee, yielding the acronym AAC, it refers to itself as the ADC. Pls.' Complaint ¶ 10.

negative stereotyping of Arab Americans wherever it is practiced." Pls.' Compl. ¶ 10. ADC claims that its members and constituents fly on all major airlines, including UAL, and that more than 2000 of its members were planning to travel to Washington, D.C. in June 2002, to attend an ADC annual conference. Pls.' Compl. ¶ 25. Furthermore, ADC states that

[s]ince September 11, the ADC has documented more than 60 incidents of alleged racial discrimination against Arab Americans by domestic and foreign airlines. Eleven of those incidents have involved passengers of Middle Eastern or South Asian descent, who,like Mr. Bayaa, were removed from flights by United Airlines.

Pls.' Compl. ¶ 24.

On December 23, 2001, one day after Richard Colvin Reid was removed from a Paris to New York flight for allegedly carrying explosives in his shoe, Defs.' Mot. Dismiss 2:27–28, Plaintiff Bayaa had a ticket to return home to Saudi Arabia on an 8:45 a.m. flight out of LAX. Pls.' Compl. ¶ 15. Bayaa arrived at the airport that day and checked two suitcases, both of which were scanned; one was "searched on the spot." Pls.' Compl. ¶ 16. He then passed through security without incident. Pls.' Compl. ¶ 16. However, when Bayaa reached the gate, he was searched with a "hand-wand" and his carry-on bag was opened and examined. Pls.' Compl. ¶ 17. Once Bayaa was on the plane, he searched for a space for his carry-on, but as he was he last on the plane, there was no room. Pls.' Compl. ¶ 18. Subsequently, he asked for assistance from a flight attendant. Pls.' Compl. ¶ 18. After looking in an overhead compartment for a space for his carry-on, Bayaa alleges that the flight attendant then inquired as to his final destination and asked him to wait as she proceeded to the front of the plane. Pls.' Compl. ¶ 18.

Bayaa was then asked by UAL personnel to proceed to the front of the plane, where he was greeted by a woman who identified herself as "head of ground security for United Airlines." Pls.' Compl. ¶ 19. She then asked him to exit the plane, explaining that: "The crew [did] not feel comfortable having [him] on board." Pls.' Compl. ¶ 19. After Bayaa asked for further explanation, she said that there was no time to discuss it further, and that he needed to step off the airplane. Pls.' Compl. ¶ 19. Bayaa claims that he was assured that his luggage would be removed before the flight took off; however, it was not. Pls.' Compl. ¶¶ 19–20. While in the jetway, Bayaa met three other men, "two of whom appeared Middle Eastern." Pls.' Compl. ¶ 20. Additionally, Bayaa claims to have heard the head of UAL ground security telling a police officer that the men had "done nothing wrong," and that UAL would attempt to book them onto a later flight. Pls.' Compl. ¶ 20. Embarrassed and humiliated, Bayaa refused the flight, and traveled, instead, on another airline. Pls.' Compl. ¶ 21.

Plaintiffs Bayaa and ADC seek declaratory and injunctive relief pursuant to 42 U.S.C. § 1981, California Civil Code section 51, *et. seq.*, and Title VI of the Civil Rights Act of 1964.

## II. Standards for Motion to Dismiss under Fed.R.Civ.P. 12(b)(6)

Defendant's Motion requires the Court to determine whether the Complaint states any claim upon which relief may be granted. Fed R. Civ. P. 12(b)(6). The Court will not dismiss plaintiff's claims for relief unless he cannot prove any set of facts in support of his claims that would entitle him to relief. *Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293, 1295 (9th Cir.1998). In limiting its inquiry to the content of the Complaint, the Court must take the allegations of material fact as true and construe

them in the light most favorable to the plaintiff. *Western Reserve Oil & Gas Co. v. New,* 765 F.2d 1428, 1430 (9th Cir.1985). Additionally, the Court "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot be reasonably drawn from the facts alleged." *Clegg v. Cult Awareness Network,* 18 F.3d 752, 755 (9th Cir.1994)

## III. Discussion

### A. Injunctive and Declaratory Relief Are Not Preempted by the Warsaw Convention.

■ It is well established that the treaty "popularly known" as the Warsaw Convention governs claims for damages against international air carriers incurred "on board [an] aircraft [bound for] or in the course of any of the operations of embarking or disembarking" an international flight. *El Al Israel Airlines v. Tseng,* 525 U.S. 155, 160, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999); Art. 17, 49 Stat. 3000 (hereinafter "Art."). However, Plaintiffs and Defendants disagree as to whether the Convention preempts claims for equitable relief as well. The Court holds that it does not.

The applicable Articles state: [3]

Article 17

The carrier shall be liable for damage sustained in the event of death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

.     .     .     .     .

Article 24

(1) In the cases covered by articles 18 and 19 any action for damages, however founded, can only be brought subject to the conditions and limits set out in this convention.

(2) In the cases covered by article 17 the provisions of the preceding paragraph shall also apply, without prejudice to the questions as to who are the persons who have the right to bring suit and what are their respective rights.

Only two courts have addressed the issue of whether claims seeking equitable relief are preempted by the Convention: *Cruz v. American Airlines,* 193 F.3d 526 (D.C.Cir.1999), and *Waters v. Port Authority of N.Y.,* 158 F.Supp.2d 415 (D.N.J. 2001). In *Cruz,* plaintiffs sought, in addition to fair value for their lost luggage, declaratory judgment that defendant's application of a lost-luggage recovery rule was unlawful, and an injunction preventing defendant from applying the rule to passengers flying to a particular geographic area. 193 F.3d at 527. The *Cruz* court separated the preemption analysis according to relief sought; first it addressed the value of the lost luggage, and then turned to equitable relief. *Id.* at 528, 532. The *Cruz* court concluded that the "Convention preempts only 'any action *for damages,* however founded,'" not for equitable remedies, and allowed the equitable claim to go forward. *Id.* at 532.

In *Waters,* plaintiff sought damages for injuries he suffered while on board an international flight as well as an injunction preventing the airline from discriminating against disabled persons. 158 F.Supp.2d at 417. Unlike, *Cruz,* The *Waters* court framed the issue as whether the Convention preempted a claim for discrimination generally, regardless of the remedy sought, concluding that "the Convention was likely intended to preempt all local causes of action, including federal causes of action, to the extent those actions seek damages against a carrier." *Id.* at 428.

---

**3.** Articles 17, 18 and 19 all use the singular     form of "damage" in the same context.

While the *Waters* plaintiffs "point[ed] out" that they sought declaratory and injunctive relief in addition to damages, the court ultimately disposed of the issue without regard to the different remedies, holding that plaintiff's entire discrimination claim was preempted. *Id.* at 428–30.

Defendants argue that this Court should be persuaded by the reasoning of *Waters* because of its "exhaustive" preemption analysis which is far more "faithful" to the Supreme Court's holding in *Tseng* that when a "claim does not satisfy the conditions for liability under the Convention," the Convention precludes a passenger from maintaining an action under local law. *Tseng,* 525 U.S. at 177, 119 S.Ct. 662; Defs.' Reply 3:11–14. However, the *Waters* analysis is not persuasive. While it is true that *Tseng* requires that a claim for damages be brought under the Convention or not at all, and that this decision was rooted in the need for a uniform liability regime designed to prevent "potentially unlimited *damages,*" it is not dispositive as to preemption of claims in *equity.* 525 U.S. at 171, 119 S.Ct. 662(emphasis added), 177; *See Waters,* 158 F.Supp.2d at 426. Hence, because of its lengthy discussion of the Convention's drafters' aversion to unlimited *damages* and *liability,* Waters fails to bolster Defendants' argument that equitable remedies should be preempted as well. *See Id.* at 428–30.

The Court, instead agrees with the conclusion in *Cruz* that, simply put, the Convention expressly preempts claims for "*damages,* however founded," 193 F.3d at 532 (emphasis in the original), not claims for equitable relief. "When interpreting a treaty, [the Court must] begin with the text of the treaty and the context in which the written words are used." *Eastern Airlines v. Floyd,* 499 U.S. 530, 534–35, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991)(internal citations and quotation marks omitted). Here the text of the Convention and the context in which the words are used are unambiguous. Its terms clearly govern all claims for *damages,* and the context of the terms reveals the same. *See* Arts. 17, 18, 19 & 24. Nowhere in the text does the Convention state that claims for *equitable* relief are covered as well.

Furthermore the Court is not persuaded by Defendants' attempt to parse the plain text of the Convention. UAL argues that claims for equity are also preempted because the language in the Convention covers all grievances accrued during international travel, not merely those that would yield monetary damages. Defendants claim that "damage" under Article 17 intimates the "principle of damage," as distinct from monetary "damages" under Article 24(1). The Court is not persuaded that "damage" and "damages" are two *different* words, entitled to different interpretations. These are, in fact, two forms of the same word; one singular, the other plural. Taken in context is it clear that claims for monetary *damage* and *damages* only are preempted by the substantive scope of the Warsaw Convention, whereas a request for equitable relief is not.[4] *See* Arts. 17, 18, 19, & 24. Rules of statutory construction require that the Court defer to the plain language of the Convention where the text is clear. *Eastern Airlines,* 499 U.S. at 534–35, 111 S.Ct. 1489. Thus, Plaintiffs' claim for equitable relief is not preempted by the Convention.

---

**4.** Plaintiffs are correct in noting that if a claim for declaratory and injunctive relief is not preempted by the Warsaw Convention, the issues of whether Plaintiff ADC was a "passenger" for the purposes of standing under the Convention is moot. Additionally, because the equitable claim is not preempted the Court will not address Defendants' argument regarding whether the Convention also preempts Plaintiff Bayaa's discrimination claims.

**B. Plaintiff ADC Does Not Have Representational Standing as It Has Not Alleged an Injury to Its Members.**

In addition to constitutional justiciability requirements for individual plaintiffs,

> [i]t has long been settled that '[even] in the absence of injury to itself, an association may have standing solely as the representative of its members.' While the 'possibility of such representational standing ... does not eliminate or attenuate the constitutional requirement of a case or controversy,' [the Supreme Court has] found that, under certain circumstances, injury to an organization's members will satisfy Article III and allow that organization to litigate in federal court on [the members'] behalf.

*Int'l Union v. Brock,* 477 U.S. 274, 281–82, 106 S.Ct. 2523, 91 L.Ed.2d 228 (1986) (internal citations omitted).

The circumstances required for representational standing are:

> (a) [the organization's] members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the law suit.

*Int'l Union,* 477 U.S. at 282, 106 S.Ct. 2523 (quoting *Hunt v. Wash. State Apple Advertising Comm'n.,* 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977)). The Court need not reach elements (b) and (c) of the representational standing analysis, as Plaintiff ADC has failed to allege standing for one or more of its members "in their own right."

For ADC members to have standing "in their own right," they must individually meet the three requirements of the U.S. Constitution, Article III: injury-in-fact, causation, and redressability. *See Legal Aid Socy. of Haw. v. Legal Servs. Corp.,*

145 F.3d 1017, 1030 (9th Cir.1998); *Int'l Union,* 477 U.S. at 282, 106 S.Ct. 2523. Plaintiff ADC's complaint must first allege that one or more of its members suffered a "concrete and particularized" "invasion of a legally protected interest," which is "actual or imminent, not 'conjectural' or 'hypothetical.'" *Id. (quoting Whitmore v. Ark.,* 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990)); *Warth v. Seldin,* 422 U.S. 490, 515, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Next, the injury must have a "fairly traceable connection between the plaintiff's injury and the complained of conduct." *Steel Co. v. Citizens for a Better Env.,* 523 U.S. 83, 103, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). And finally, there must be "a likelihood that the requested relief will redress the alleged injury." *Id.*

Plaintiff ADC has not attempted to establish that the organization itself has suffered an injury or that its members have been denied associational rights. *See Warth,* 422 U.S. at 511, 95 S.Ct. 2197. Thus, Plaintiff ADC must begin by alleging "that one or more of its *members* are injured" in a way sufficiently direct and personal to satisfy the constitutional case-or-controversy requirement. *Id.* at 514–15, 95 S.Ct. 2197 (emphasis added); *See Int'l Union* 477 U.S. at 282, 106 S.Ct. 2523. Plaintiff ADC states in its complaint that

> [s]ince September 11, the ADC has documented more than 60 incidents of alleged racial discrimination against Arab Americans by domestic and foreign airlines. Eleven of those incidents have involved passengers of Middle Eastern or South Asian descent who, like Mr. Bayaa, were removed from flights by United Airlines.

Pls.' Compl. ¶ 24. Plaintiff ADC does not claim that the eleven individuals allegedly removed from UAL flights are its members, and therefore ADC cannot seek to

represent them.[5] Further, ADC obliquely claims that "thousands of members and millions of constituents" have "at various times been subjected to racially discriminatory practices similar to" Plaintiff Bayaa's alleged experience on UAL. The Court is unsure what Plaintiff ADC intends by using "constituent" in addition to "member," as the Supreme Court has only discussed representational standing in regard to "members." *See Warth*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343. It appears from the sheer number of "constituents" that Plaintiff ADC claims to have, that almost *all* persons of Middle Eastern descent who fly internationally and domestically must be the claimed "constituents" of the ADC. The use of "constituents" does not comport with the spirit of representational standing, as its breadth defeats the exclusivity inherent in "membership." Accordingly, this Court declines to acknowledge injuries to "constituents" as satisfying the representational requirement of injury to "members." ADC has failed to allege injury-in-fact to its members.

Furthermore, even if the Court allowed the use of "constituents" and accepted that they were injured by discriminatory conduct, the complaint does not allege that "the thousands of members and millions of constituents" were injured by UAL. Reports and statistics detailing "air carriers discriminating" against passengers of Arab and Middle Eastern descent, and Department of Transportation emails directed at *all* airlines emphasizing the importance of not discriminating based on "generalized stereotypes or attitudes or beliefs" do nothing to bolster a claim that *UAL* caused the injuries alleged to be suffered by "thousands" of ADC "members." *See* Pls.' Compl. ¶¶ 4–5. Although ADC did allege documentation of eleven passengers removed from UAL flights for improper purposes, these passengers were not alleged to be ADC members. Therefore, Plaintiff ADC fails to meet the requirement of causation as well.

Although the Court agrees with the statement in Plaintiffs' complaint that "no legal authority requires that the names and contact information of individual members be alleged in the complaint," *Rodriguez v. Cal. Highway Patrol*, 89 F.Supp.2d 1131, 1136 (N.D.Cal.2000), ADC must *at least* allege that the injured persons are members of its organization, and those injuries are "fairly traceable" to the conduct of UAL. It cannot seek relief from Defendants on behalf of American–Arabs [6] all over the world who have allegedly been discriminated against on all major airlines at various times, or on behalf of non-member passengers. Such allegations are specifically prohibited by the constitutional requirements of injury-in-fact and causation. Thus, because Plaintiff ADC has failed to establish standing of its members "in their own right," ADC cannot claim representational standing.

**C. Redressability of Plaintiff Bayaa's Claim.[7]**

Because it is undisputed that Plaintiff

---

5. If ADC is unable to allege that specific injuries were inflicted upon its members, it would then be seeking to advocate the rights of third parties not included in its membership. However, it is unlikely that Plaintiff ADC could successfully establish standing in a third party context. *See Warth*, 422 U.S. at 514, 514 n. 22, 95 S.Ct. 2197 (plaintiff organization lacked associational standing as the alleged injury was discrimination against non-members; footnote details some excep-

tions to the prohibition against third party standing).

6. Plaintiff ADC also alleges that it has documented instances of discrimination against individuals of South Asian descent.

7. Because Plaintiff ADC's claim is dismissed, redressability will be discussed only in the context of Plaintiff Bayaa's claim.

Bayaa has alleged that he was injured and that the injury was attributable to actions and agents of UAL, the only remaining question is whether the court can redress Plaintiff Bayaa's alleged injury.[8] *See Steel,* 523 U.S. at 103, 118 S.Ct. 1003. Here, Bayaa requests that the court declare illegal UAL's alleged pattern and practice of removing individuals from flights based on perceived Middle Eastern ethnicity, and to enjoin UAL from engaging in this conduct in the future. However, Defendants cite Federal Rule of Civil Procedure 65(d) and argue that such an "obey the law" injunction is impermissible as being too vague and unspecific. Federal Rule of Civil Procedure 65(d), however, governs the actual injunction *ordered,* not requested. *See* Fed.R.Civ.P. 65(d); *Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.,* 299 F.3d 643, 646 (7th Cir.2002); *Henrietta D. v. Giuliani* 246 F.3d 176, 182 (2d Cir.2001). Therefore Defendants' argument is premature.

■ Furthermore, "where, as here, a plaintiff seeks prospective injunctive relief, he must demonstrate 'that he is realistically threatened by a repetition of [the violation].' *Lyons,* 461 U.S. at 109, 103 S.Ct. 1660 (emphasis added) (holding that plaintiff cannot establish the requisite type of harm simply by pointing to some past injury)." *Armstrong v. Davis,* 275 F.3d 849, 861 (9th Cir.2001);[9] *See Hodgers–Durgin v. Gustavo de la Vina,* 199 F.3d 1037, 1039–40 (9th Cir.1999). Here Plaintiff alleges that he is an American Citizen who works full-time in Saudi Arabia, and

that he travels frequently on UAL to visit his family and conduct business. Plaintiff has sufficiently pleaded that future encounters between him and Defendants are likely to occur. This case is distinguishable from those in which an injunction is sought against law enforcement to prevent future incidents of excessive force. *See Lyons,* 461 U.S. at 105–08, 103 S.Ct. 1660; *Lane v. Williams,* 455 U.S. 624, 102 S.Ct. 1322, 71 L.Ed.2d 508 (1982). Where a plaintiff has engaged in entirely innocent conduct, resulting in an alleged injury, allegations of a likelihood of future contact with the defendant are sufficient to satisfy the pleading requirements for standing. *Cf. Hodgers–Durgin,* 199 F.3d at 1041–42.

Defendants also argue that an order requiring them to comply with 42 U.S.C. § 1983, the Civil Rights Act of 1964, and/or the California Unruh Civil Rights Act would conflict with their duty to use discretion under 49 U.S.C. § 44902 and immunity under 49 U.S.C. § 4494. There is no merit to this argument. Defendants' duty under 49 U.S.C. § 44902 does not grant them a license to discriminate.

■ Additionally, 49 U.S.C. § 44941, "Immunity for reporting suspicious activities," specifically applies to the *disclosure* of suspicious activities, not the actions taken pursuant thereto.

## IV. Conclusion [10]

Defendants' motion to dismiss is GRANTED in part and DENIED in part. Plaintiff ADC's claim is dismissed with 20

---

**8.** Again, because requests for equitable relief are not preempted by the Convention, disputes as to whether Plaintiff Bayaa was injured according to the terms of the Convention are irrelevant; he must only allege injury pursuant to the U S. Constitution, Article III requirements.

**9.** Although factually the plaintiff in *Armstrong* sought to be a class representative, the discus-

sion of standing and redressability is instructive.

**10.** Defendants' August 26, 2002 request for a jury trial is denied as this is a request for equitable relief and there is no constitutional or statutory right to have this case tried by jury. *See* Fed.R.Civ.P. 38.

days' leave to amend in conformity with this order.