Leonard **SCHOPENHAUER**, Plaintiff,

v.

**COMPAGNIE NATIONALE AIR FRANCE**, Defendant.

No. CIV. 00–7131(LBS).

United States District Court, E.D. New York.

March 31, 2003.

Vincent I. Eke–Nweke, Esq., Law Office of Vincent I. Eke–Nweke, P.C., Brooklyn, NY, for Plaintiff.

Jon D. Miller, Esq., Bigham Englar Jones & Houston, New York City, for Defendant.

### OPINION AND ORDER

SAND, District J.[*]

Plaintiff Leonard Schopenhauer instituted this action against Defendant Compagnie Nationale Air France seeking compensation for baggage allegedly lost and damaged on a pair of Air France flights in late 1999. Air France brings the instant motion for partial summary judgment, seeking to limit its liability for the entirety of Schopenhauer's claim and to dismiss part of his claim for lack of jurisdiction. For the reasons set forth below the Court grants the motion in part and denies it in part.

## I. Facts

Most of the material facts are not in dispute. In October 1999, through a travel agency named Magical Holidays, Inc., Schopenhauer purchased a round-trip tick-

[*] Sitting by Designation.

et for travel on Air France from New York City to Cotonou, Republic of Benin. The trip included a four-day stopover in Paris on the way to Benin, and a 13–hour stopover in Paris on the way back to New York. Magical Holidays issued Schopenhauer a ticket booklet which contained at least five detachable pages. The first four pages were passenger tickets for each of the four flights in Schopenhauer's itinerary: one ticket covered the New York–to–Paris flight, one ticket covered the Paris–to–Cotonou flight, one ticket covered the Cotonou–to–Paris return flight, and one ticket covered the Paris–to–New York return flight. The first ticket was used on Schopenhauer's first flight and is thus not in evidence, but copies of the second through fourth tickets are attached as exhibits to Schopenhauer's Affidavit in Opposition to Defendant's Motion for Summary Judgment ("Pl.Aff."). Each bears the heading "Passenger Ticket and Baggage Check," and lists, *inter multa alia*, Schopenhauer's name, the Air France flight number, the flight time, and the departure and destination airports.[1] On the right-hand side of each "Passenger Ticket and Baggage Check" is an apparently detachable stub with the heading "Boarding Pass." At the bottom of this section is a set of smaller headings, "Pcs," "Wt," "Unckd," and "Baggage ID Number"; there is blank space underneath these headings, presumably to permit the entry of data. The fifth page of the booklet is also labeled "Passenger Ticket and Baggage Check," but indicates "Passenger Receipt" across the top; further, the "Boarding Pass" heading is blocked out with x's, and all four of Schopenhauer's flights are listed underneath. Magical Holidays also issued Schopenhauer a paper itinerary listing the four flights.[2]

On November 20, 1999, Schopenhauer arrived at John F. Kennedy International Airport in New York City and checked five bags. He attempted to carry a sixth bag onto the aircraft, but the Air France cabin attendant told him that it was "too bulky" and insisted that that he check it instead. Pl. Aff. at 2. Schopenhauer gave the bag to the attendant, and in return the attendant gave him an Air France "Limited Release" identification tag. The Limited Release tag bore the identification number 0057AF913435, and indicated that the flight was "AF 007" from "JFK" to "CDG."[3] Schopenhauer and Flight 007 arrived in Paris the next morning; the sixth bag did not. In fact the bag did not turn up again until Air France returned it to Schopenhauer, heavily looted, on January 2, 2000. Schopenhauer values the lost and damaged items from that bag at approximately $69,000.[4]

1. The tickets are printed on forms produced by a company called the Airlines Reporting Corporation, which supplies blank ticket stock to travel agencies. These ticket forms are identifiable by the logo "ARC."

2. The ticket booklet and the Magical Holidays itinerary are included as Pl. Aff. Ex. 1. Only the front of each page of the ticket booklet is included in the exhibit to Plaintiff's Affidavit. The reverse sides of the second through fifth pages are included (substantially illegibly) as exhibits to Air France's Reply Memorandum to Plaintiff's Supplemental Memorandum of Law ("Def. Reply Mem. to Pl. Suppl. Mem."). Air France also provided a blank ARC ticket form as an exhibit to the same memorandum, though this form differs slightly from the stock used to print Schopenhauer's tickets.

3. "CDG" are the initials of Charles de Gaulle International Airport in Paris. The front side of the Limited Release tag is included as Pl. Aff. Ex. 2.

4. Schopenhauer's Complaint leaves unclear whether the $69,000 figure includes the value of the ticket booklet (eventually replaced free of charge) and a further $6000 in lost cash. The bag was mostly filled with jewelry and electronics that Schopenhauer evidently intended to sell in Benin.

Unfortunately for Schopenhauer, among the items stored in the missing sixth bag was the rest of his ticket booklet, including the tickets for the remaining three flights in his itinerary. While waiting for Air France either to locate the bag or to issue a replacement ticket, Schopenhauer missed his intended Paris–to–Benin flight on November 25, 1999, and did not fly to Benin until Air France finally issued a replacement ticket on November 26.[5] On the November 26 flight to Benin, Schopenhauer again checked six pieces of baggage, but upon his arrival two of the pieces were "completely destroyed" and thoroughly looted. Pl. Aff. at 3–4. Schopenhauer values the lost contents of those two bags at approximately $2200. Luckily, no further actionable mishaps occurred before Schopenhauer's return to New York.

---

**5.** The replacement ticket receipt is included as Pl. Aff. Ex. 4. Like the tickets issued to Schopenhauer in New York, this form is headed "Passenger Ticket and Bag Check," although it is not an ARC form, and much of it is printed in both English and French. The receipt is also marked "Emis en remplacement billet perdu," which translates as "Issued in replacement, ticket lost." *Collins Robert French–English English–French Dictionary* (2d ed.1987). The replacement ticket also apparently changed the dates of Schopenhauer's return flights from mid-January to late December.

**6.** Because Air France's jurisdictional argument was rejected in open court, the Court treats it only briefly here. *See* Tr. Oral Argument, Feb. 6, 2003, at 11–15.

Air France did not question the subject matter jurisdiction of a federal court to hear cases arising under the Warsaw Convention, but rather the treaty jurisdiction of the United States to hear a case concerning damages incurred on a flight from Paris to Benin. Under Article 28(1) of the current version of the Warsaw Convention, treaty jurisdiction is proper:

at the option of the plaintiff, in the territory of one of the High Contracting Parties, either [1] before the court of the domicile of

## II. Discussion

### A. Air France's Arguments

■■■ In its motion for summary judgment Air France sets forth two arguments, each of which relies on the Warsaw Convention, a multilateral treaty governing international air travel. First, Air France invokes a provision of the Warsaw Convention which in certain circumstances limits an air carrier's liability for lost or damaged baggage to $20 per kilogram. Second, Air France seeks to dismiss that part of Schopenhauer's claim which relates to the damages allegedly incurred on the Paris–to–Benin flight on the basis that the Warsaw Convention does not provide for United States jurisdiction over that portion of the trip. The Court rejected the second contention at oral argument on February 6, 2003.[6] It now addresses the

---

the carrier or [2] of his principal place of business, or [3] where he has a place of business through which the contract has been made, or [4] before the court at the place of destination.

It is well settled in this Circuit that the place of destination of a round-trip journey is the same as the place of departure. *See Klos v. Polskie Linie Lotnicze,* 133 F.3d 164, 167 (2d Cir.1997) (noting that the argument "that jurisdiction could be based on an interim city appearing on a round-trip ticket" has been "consistently rejected"); *In re Alleged Food Poisoning Incident, March, 1984,* 770 F.2d 3, 4–5 (2d Cir.1985) ("We hold that when the parties have contemplated a single operation of undivided transportation only one 'destination' exists, and, in the case of a round trip, that destination is the same as the place of origin."); *Gayda v. LOT Polish Airlines,* 702 F.2d 424, 425 (2d Cir.1983) ("[F]or Article 28 purposes it is the 'ultimate' destination listed in the contract for carriage that controls."). Whether a trip is intended as a round trip is in turn a question of contract rather than of the passenger's subjective intent. *See Klos,* 133 F.3d at 167–68. It cannot reasonably be disputed in this case that Schopenhauer and Air France contracted for a round trip beginning and ending in New York City. Under the fourth heading of Article 28(1), then, treaty

first.

## B. The Warsaw System

Air France claims that under Article 22(2) of the Warsaw Convention, its liability for any lost or damaged baggage should be limited to $20 per kilogram. Whether this is in fact the case depends largely on an interpretation of Article 4 of the Convention, which governs the delivery of baggage checks. Yet before the Court turns to Article 4, confusion evidenced by the parties in their briefs and at oral argument compels the Court to address at some length which version of the Warsaw Convention is currently in force in the United States.

The original Convention for the Unification of Certain Rules Relating to International Transportation by Air was signed in 1929 and ratified by the United States in 1934. *See* 49 Stat. 3000, T.S. No. 876 (1934), reprinted in note following 49 U.S.C. § 40105. The Convention created a presumption of air carrier liability for personal injury and baggage and cargo damage, but also contained strict limits on that liability. "At the time the Senate ratified the treaty, the United States (and the world) was in the midst of the Great Depression and the liability provisions in the treaty were thought to provide some benefit to carriers, passengers, and shippers alike." *Chubb & Son, Inc. v. Asiana Airlines*, 214 F.3d 301, 306 (2000). "With the growth of the world economy and the air industry, however, the liability limitation, and particularly the per-passenger limitation, became increasingly unpopular in this and other countries." *Id.* In 1955 a new conference convened at the Hague and

---

jurisdiction lies in the United States for any damages incurred on the Paris–to–Benin flight.

Air France sets forth two arguments in an attempt to avoid jurisdiction. First it fashions a novel "intent-of-the-baggage" standard to distinguish passenger destination from baggage destination. Under this theory, while jurisdiction for personal injury claims may depend on the ticketed round-trip destination, jurisdiction for baggage loss claims ought to depend on where the passenger intended the baggage to end up. This argument flatly contravenes unbroken precedent in this Circuit that has consistently, if implicitly, asserted treaty jurisdiction over baggage loss claims on the basis of passenger destination alone. *See, e.g., Campbell v. Air Jam., Ltd.,* 863 F.2d 1, 2 (2d Cir.1988); *Benjamins v. British European Airways,* 572 F.2d 913, 915 (2d Cir. 1978); *Donkor v. British Airways Corp.,* 62 F.Supp.2d 963, 966 (E.D.N.Y.1999); *Solanki v. Kuwait Airways,* 1987 WL 13194, *2 (S.D.N.Y. June 24, 1987); *Sabharwal v. Kuwait Airways Corp.,* 1984 WL 3639, *1 (E.D.N.Y. Nov. 5, 1984); *Bornstein v. Scandinavian Airlines Sys.,* 1981 U.S. Dist. LEXIS 14569, *1 n. 1 (S.D.N.Y. May 5, 1981). Moreover, Air France does not suggest how its intent-of-the-baggage standard could sidestep the numerous cases rejecting subjective-intent inquiries for the purposes of the Warsaw Convention's jurisdictional inquiry. *See, e.g., Klos,* 133 F.3d at 168 ("The secret or subjective intent of the parties is irrelevant."); *Solanki,* 1987 WL 13194, at *2. Finally, it bears mentioning that Air France has failed to provide the Court with sufficient evidence to enable it to determine exactly which items in which bags were intended to remain in Benin, and which were intended to return to New York.

Less creatively but more cynically, Air France suggests in a second argument that because the replacement ticket was issued in Paris, a new contract for carriage was made in France rather than in the United States, and thus treaty jurisdiction is improper under the third jurisdictional head of Article 28(1). Even putting aside the fact that Air France was presumptively responsible for losing Schopenhauer's original ticket in the first place, this "new contract" theory ignores the fact that because the jurisdictional heads of Article 28(1) are disjunctive in nature, jurisdiction lies in the United States under the destination theory alone. (Because Schopenhauer nowhere disputes that liability for any damages incurred on the Paris–to–Benin flight is limited to $20 per kilogram, at most a few hundred dollars depend on the resolution of this issue.)

proposed the Hague Protocol to amend and modernize the Warsaw Convention.

Despite various changes (including a wholesale revision of Article 4 relevant to this case), the United States remained unsatisfied with the low liability limits, especially for personal injury claims, and chose not to ratify the Hague Protocol. Much of the world adopted the new version of the Convention, but the original Warsaw Convention remained in force in the United States throughout most of this century.[7]

A further conference held at Montreal in 1975 produced four additional protocols to the Warsaw Convention. Among these was the pithily titled Montreal Protocol No. 4 to Amend the Convention for the Unification of Certain Rules Relating to International Carriage by Air Signed at Warsaw on 12 October 1929 as amended by the Protocol done at the Hague on 28 September 1955. Although the bulk of Montreal Protocol No. 4 dealt with modernization of the cargo waybill provisions of the earlier versions of the Warsaw Convention, it also provided in Article 17(2) that ratification of Montreal Protocol No. 4 would have the effect of ratification of a single treaty consisting of the terms of the original Warsaw Convention, as amended by the Hague Protocol, as amended by Montreal Protocol No. 4. *See* S. Exec. Rep. No. 105–20, at 21. The United States ratified Montreal Protocol No. 4 on September 28, 1998, and it came into force in this country on March 4, 1999. *See Chubb*

*& Son,* 214 F.3d at 307 n. 4. To the knowledge of this Court, only one reported case in this country has applied the current version of the Warsaw Convention. *See Ijedinma v. Northwest Airlines,* 2001 U.S. Dist. LEXIS 10412 (E.D.La. July 16, 2001). Yet the ratification of Montreal Protocol No. 4 and its effect on the provisions of the Warsaw Convention have been discussed in several prior cases. *See, e.g., Curtin v. United Airlines, Inc.,* 275 F.3d 88, 91 n. 3 (D.C.Cir.2001) (noting that Montreal Protocol No. 4 took effect March 4, 1999); *Cruz v. Am. Airlines, Inc.,* 193 F.3d 526, 530 (D.C.Cir.1999) (mistakenly stating that the treaty entered into force on March 3, 1999); *Spanner v. United Airlines, Inc.,* 177 F.3d 1173, 1176 n. 4 (9th Cir.1999); *Perri v. Delta Air Lines, Inc.,* 104 F.Supp.2d 164, 168 (E.D.N.Y.2000) ("Montreal Protocol No. 4 took effect in the United States on March 4, 1999.").[8]

In its motion for summary judgment, Air France correctly cited the current version of the Warsaw Convention and noted that this version applied because the flights in this case took place after the March 4, 1999 effective date of Montreal Protocol No. 4. Nonetheless, Plaintiff in his responsive papers relied on Article 4 of the original Warsaw Convention. Air France having once again raised the amendment in its reply brief and the Court having called his attention thereto at

---

7. At the time, the United States even considered denouncing the original Warsaw Convention, but its concerns were allayed by a non-treaty "Intercarrier Agreement" signed in Montreal in 1966, in which air carriers agreed to more liberal liability rules regarding personal injury claims. *See Chubb & Son,* 214 F.3d at 307 n. 4.

8. For ease of terminology, the Court generally refers to the "original Warsaw Convention," meaning the 1929 version, and the "current Warsaw Convention," meaning the version in

effect as of March 4, 1999 and incorporating the terms of the Hague Protocol and Montreal Protocol No. 4. The Court also refers to the original and current versions as the "old" and "new" versions. When referring specifically to the 1955 Hague revisions of the original Warsaw Convention, the Court occasionally refers to the "Hague Protocol," even though those revisions did not take effect in this country until the ratification of Montreal Protocol No. 4 in 1999. The current Warsaw Convention is reprinted in S. Exec. Rep. No. 105–20, at 21.

oral argument, Schopenhauer now concedes that the Hague Protocol applies.

That, however, does not end the confusion. Despite having itself alerted Plaintiff to the current status of the Warsaw Convention in the United States, Air France in its Supplemental Memorandum in Support of Motion for Summary Judgment ("Def.Suppl.Mem."), for reasons still unclear to the Court, cited and provided legal analysis relevant only to a different treaty, the so-called Convention for the Unification of Certain Rules for International Carriage by Air, done at Montreal (the "Montreal Convention"). *See* S.Rep. No. 106–45, at 28. The Montreal Convention is not a protocol to the original Warsaw Convention, nor (*a fortiori*) is it the same as Montreal Protocol No. 4; rather, it is a proposed unification and replacement of the entire Warsaw System. The Montreal Convention has attracted a certain amount of critical attention,[9] but not only has it not been ratified by the United States, it lacks the requisite number of ratifications even to come into force of its own terms.[10] The Court therefore wishes to make clear that its analysis of the instant motion is based upon the current Warsaw Convention, i.e. the original Warsaw Convention, as amended by the Hague Protocol, as amended by Montreal Protocol No. 4.

### C. Article 22 Limited Liability and Article 4 Baggage Checks

Article 18(1) of the current Warsaw Convention establishes a presumption that "[t]he carrier is liable for damage sustained in the event of the destruction or loss of, or damage to, any registered baggage, if the occurrence which caused the damage so sustained took place during the carriage by air." Article 22(2)(a), however, provides that "[i]n the carriage of registered baggage, the liability of the carrier is limited to the sum of [twenty dollars] per kilogram, unless the passenger or consignor has made [alternative insurance arrangements]." The dispositive question is whether Article 22's liability limitation applies in this case: if it does, then Air France's liability is limited to $20 per kilogram; if it does not, then Schopenhauer is free to prove actual damages.

In seeking to prove that Article 22's liability limitation does not apply, Schopenhauer points to Article 4, the Convention's baggage check provision. Article 4 of the original Convention reads:

1. For the transportation of baggage, other than small personal objects of which the passenger takes charge himself, the carrier must deliver a baggage check.

2. The baggage check shall be made out in duplicate, one part for the passenger and the other part for the carrier.

3. The baggage check shall contain the following particulars:

   a. The place and date of issue;

   b. The place of departure and of destination;

   c. The name and address of the carrier or carriers;

   d. The number of the passenger ticket;

---

**9.** *See, e.g.,* Pablo Mendes De Leon & Werner Eyskens, *The Montreal Convention: Analysis of Some Aspects of the Attempted Modernization and Consolidation of the Warsaw System,* 66 J. Air. L. & Com. 1155 (2001).

**10.** *See* International Civil Aviation Organization Treaty Collection, http://www.icao.int/icao/en/leb/mt199.htm (noting that the Montreal Convention currently has twenty seven of the thirty necessary ratifications, and that it has not been ratified by the United States) (last updated Mar. 3, 2003).

e. A statement that delivery of the baggage will be made to the bearer of the baggage check;

f. The number and weight of the packages;

g. The amount of the value declared in accordance with article 22(2);

h. A statement that the transportation is subject to the rules relating to liability established by this convention.

4. The absence, irregularity, or loss of the baggage check shall not affect the existence or the validity of the contract of transportation which shall none the less be subject to the rules of this convention. Nevertheless, if the carrier accepts baggage without a baggage check having been delivered, or if the baggage check does not contain the particulars set out at (d), (f), and (h) above, the carrier shall not be entitled to avail himself of those provisions of the convention which exclude or limit his liability.

Article 4 of the current Convention reads:

1. In respect of the carriage of registered baggage, a baggage check shall be delivered, which, unless combined with or incorporated in a passenger ticket which complies with the provisions of Article 3, paragraph 1, shall contain:

a. an indication of the places of departure and destination;

b. if the places of departure and destination are within the territory of a single High Contracting Party, one or more agreed stopping places being within the territory of another State, an indication of at least one such stopping place;

c. a notice to the effect that if the carriage involves an ultimate destination or stop in a country other than the country of departure, the Warsaw Convention may be applicable and that the Convention governs and in most cases limits the liability of carriers in respect of loss of or damage to baggage.

2. The baggage check shall constitute *prima facie* evidence of the registration of the baggage and of the conditions of the contract of carriage. The absence, irregularity or loss of the baggage check does not affect the existence or the validity of the contract of carriage which shall, none the less, be subject to the rules of this Convention. Nevertheless, if the carrier takes charge of the baggage without a baggage check having been delivered or if the baggage check (unless combined with or incorporated in the passenger ticket which complies with the provisions of Article 3, paragraph 1(c)) does not include the notice required by paragraph 1(c) of this Article, he shall not be entitled to avail himself of the provisions of Article 22, paragraph 2.

Article 3(1)(c) of the current Convention, invoked in Article 4(2) above, requires that the passenger ticket contain

a notice to the effect that, if the passenger's journey involves an ultimate destination or stop in a country other than the country of departure, the Warsaw Convention may be applicable and that the Convention governs and in most cases limits the liability of carriers for death or personal injury and in respect of loss of or damage to baggage.

Per the current version of Article 4, the "absence, irregularity or loss" of the baggage check generally has no effect on Article 22's liability limitation. But in two specified cases, failure to comply with Article 4 does preclude an air carrier from limiting its liability: 1) "if the carrier takes charge of the baggage without a baggage

check having been delivered"; and 2) if the baggage check (unless "combined with or incorporated in" a valid passenger ticket) does not include the notice of potential applicability of the Warsaw Convention. By contrast, under the original Convention, the air carrier could not invoke Article 22 if the baggage check omitted 1) the ticket number; 2) the number and weight of the bags; or 3) the Warsaw Convention notice.

■ Because there is no contention that the baggage check issued with respect to the baggage lost and damaged on the Paris-to-Benin flight was in any way insufficient, the Court hereby grants Air France's motion to limit its liability insofar as it relates to that flight.[11] The only dispute that remains for resolution, then, is whether the baggage check Schopenhauer received with respect to the baggage allegedly lost and damaged on the New York-to-Paris flight—namely the sixth bag, which the flight attendant insisted Schopenhauer check after he boarded the plane—was sufficient to allow Air France to invoke Article 22.

In arguing that it was not sufficient, Schopenhauer points to the "Limited Release" identification tag which the flight attendant handed him in return for the sixth bag. Noting that the Limited Release tag listed only the departure and destination cities but not the number of the passenger ticket or the weight of the

bag, Schopenhauer initially argued that it was clearly insufficient on that basis. In support of this contention, he cited a series of cases which precluded an air carrier from limiting its liability where the baggage check did not record the weight of the bags. *See, e.g., Tchokponhove v. Air Afrique,* 953 F.Supp. 79, 83 (S.D.N.Y. 1996); *see also* cases cited *infra* pp. 90–92. The fatal flaw in this argument, of course, was that it relied on the original version of Article 4. The current version of Article 4, as quoted above, specifically eliminated the requirement that the baggage check include the ticket number and the number and weight of the bags in order to qualify for limited liability.

Again, however, this does not end the inquiry, for it is clear that the Limited Release tag also lacked the Warsaw Convention notice required by Article 4(1)(c) of the current Convention.[12] Although Air France also relies on the Limited Release tag as the baggage check, it did not address Article 4(1)(c) in its initial papers or at oral argument. After the Court *sua sponte* brought it to the parties' attention, Air France responded in its supplemental briefs with two arguments, both of which continue to rely on the Limited Release tag as the baggage check.

■ First, Air France argues that the Limited Release tag was sufficient even without a Warsaw Convention notice because such a notice was already included in

---

**11.** It must be observed that Air France's initial motion for summary judgment, which moved to dismiss the Paris-to-Benin claim for lack of jurisdiction, did not move in the alternative to limit its liability for that claim. Air France did not even raise that issue until its third memorandum of law. Schopenhauer, however, has not addressed the issue at all, and nowhere in his Complaint or briefs, or at oral argument, has suggested any deficiency in the Paris-to-Benin baggage check.

Schopenhauer does claim in his Complaint that Air France should be precluded from limiting its liability because it committed

"willful misconduct" within the meaning of Article 25 of the current Convention, but nowhere pleads any facts or provides any legal analysis in support of this allegation. The "willful misconduct" charge therefore cannot stand in the way of the motion for summary judgment.

**12.** It is clear at least that the front of the Limited Release tag lacked such a notice. At oral argument Plaintiff represented, and Defendant did not dispute, that the reverse of the Limited Release tag was blank.

the passenger ticket, and Schopenhauer therefore had actual notice of the potential applicability of the Warsaw Convention. Indeed, Schopenhauer does not allege that he was actually ignorant of the provisions of the Convention, and Air France points out that an essentially identical Warsaw Convention notice was present on various other documents in Schopenhauer's possession.[13] The Court rejects this argument because recent cases interpreting the Warsaw Convention have made clear that its provisions are to be enforced strictly and without regard to whether lack of compliance by the air carrier actually prejudiced the passenger.

It is worth noting at the outset that because the Hague Protocol (and its revision of Article 4) did not become effective in the United States until early 1999, there is a dearth of reported caselaw in this country interpreting its provisions.[14] There is, however, a large body of caselaw in this and other Circuits interpreting the provisions of the original Convention, and that body of law provides sufficient principles by which this Court can guide its interpretation of the current Convention.

Specifically, the Court focuses on a line of cases determining whether to limit an air carrier's liability in cases where the baggage check did not contain the particulars—most commonly the weight of the bags—required by the original Article 4. Even though the failure to record the weight of the bags was unlikely to prejudice a passenger whose bags were lost—especially if the air carrier agreed to compensate the passenger $20 per kilogram for the maximum allowable weight—courts tended to apply the Convention literally and hold air carriers to unlimited liability where they failed to deliver sufficiently particular baggage checks. *See, e.g., Gill v. Lufthansa German Airlines*, 620 F.Supp. 1453, 1455 (E.D.N.Y.1985) (citing cases); *Maghsoudi v. Pan Am. World Airways, Inc.*, 470 F.Supp. 1275, 1280 (D.Haw.1979); *Hill v. E. Airlines, Inc.*, 103 Misc.2d 306, 425 N.Y.S.2d 715, 716 (1980). In a pair of cases in the mid–1980s, the Second Circuit suggested that it might not apply the Convention strictly in the case of businesses or sophisticated commercial passengers. In *Exim Indus-*

---

**13.** Air France points to an excess-baggage receipt given to Schopenhauer that contains a Warsaw Convention notice on its reverse side. *See* Def. Suppl. Mem. Ex. A. Air France also points out that the Warsaw Convention notice is printed on the back of every airline ticket, and in the ticket jacket which Schopenhauer presumably received at check-in. *See* Def. Reply Mem. to Pl. Suppl. Mem. Ex. A (ticket jacket containing Warsaw Convention notice); Ex. B (blank ARC ticket form of the type Schopenhauer received, containing Warsaw Convention notice on its reverse); Ex. C (photocopies of the backs of Schopenhauer's three unused tickets, containing Warsaw Convention notice).

Air France also points out, albeit in a different context, that Schopenhauer is no stranger to Warsaw Convention litigation: Schopenhauer, it turns out, was also the plaintiff in the *Tchokponhove* case decided under similar facts in the Southern District of New York.

**14.** As noted above, the lone exception appears to be *Ijedinma v. Northwest Airlines*, 2001 WL 803745 (E.D.La. July 16, 2001). *Ijedinma* presents problematical precedent, however, because it appears to confuse the requirements of the old and new versions of the Warsaw Convention. Although the flight in *Ijedinma* took place on April 1, 1999—after the effective date of Montreal Protocol No. 4—the court cites the particularity requirements of the original Article 4. Noting that the baggage check did not contain the baggage weight as required by the old Convention, the court reports in a footnote that the new version no longer requires the baggage weight, but then exits the footnote only to hold that the check was sufficient because it did in fact contain the ticket number—which, as related above, is also no longer required in the current Convention. *Id.* at *2 n. 1.

*tries, Inc. v. Pan American World Airways, Inc.*, 754 F.2d 106, 108 (2d Cir.1985), the court declined to hold a cargo carrier to the strict requirements of Article 8 (the analog to Article 4 for cargo waybills), because the cargo owner was a commercial enterprise and the omitted particulars were of "no practical significance." Next, in *Republic National Bank of New York v. Eastern Airlines, Inc.*, 815 F.2d 232 (2d Cir.1987), the court extended *Exim*'s holding to Article 4 itself and limited the liability of an air carrier which in place of a complete baggage check delivered only a "Limited Release" tag that did not contain the requisite baggage weight, ticket number, or Warsaw Convention notice. In so doing, the *Republic National Bank* court noted that 1) the passenger was a sophisticated bank courier transporting $2 million in cash for commercial purposes and was thus "more like a commercial shipper than the typical airline passenger"; 2) after having flown over 250 similar courier flights "it would be incredible for [the courier] not to be aware of the applicability of the Warsaw Convention"; and 3) the omitted particulars were merely "technical and insubstantial omissions that did not prejudice the shipper." *Id.* at 237–38 (quoting *Exim*, 754 F.2d at 108).[15]

The emerging *Exim* and *Republic National Bank* approach was significantly un-dermined by the Supreme Court's decision in *Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122, 109 S.Ct. 1676, 104 L.Ed.2d 113 (1989). *Chan* dealt with Article 3 of the original Convention, which required that the passenger ticket contain a Warsaw Convention notice but did not explicitly state that failure to provide such a notice would preclude the carrier from invoking Article 22 to limit its liability.[16] Plaintiffs argued that this was merely a drafting error and that it made no sense to predicate limited liability for baggage on the presence of a Warsaw Convention notice on the baggage check, but not to predicate limited liability for personal injury on such a notice in the ticket. But the Court refused to read policy into the Convention and held that it "must ... be governed by the text—solemnly adopted by the governments of many separate nations .... Where the text is clear, as it is here, we have no power to insert an amendment." *Id.* at 126–27, 109 S.Ct. 1676.[17]

In the wake of *Chan*, the Second Circuit cabined *Exim* to its facts and heralded an era of strict interpretation of Warsaw Convention particularity requirements. *See Mar. Ins. Co. v. Emery Air Freight Corp.*, 983 F.2d 437, 440 (2d Cir.1993) (declining to limit liability where a cargo waybill did not contain the required particulars and

---

**15.** Even after *Republic National Bank* some courts continued to hold airlines to the strict requirements of Article 4 where the passengers were not as commercially sophisticated as the bank courier. *See, e.g., Vekris v. Peoples Express Airlines, Inc.*, 707 F.Supp. 675, 678 (S.D.N.Y. Aug.25, 1988).

**16.** The current version of Article 3 does explicitly predicate limited liability on inclusion of the Warsaw Convention notice in the passenger ticket.

**17.** The Court went on to quote Justice Story: "[T]o alter, amend, or add to any treaty, by inserting any clause, whether small or great, important or trivial, would be on our part an usurpation of power, and not an exercise of judicial functions. It would be to make, and not to construe a treaty. Neither can this Court supply a casus omissus in a treaty, any more than in a law. We are to find out the intention of the parties by just rules of interpretation applied to the subject matter; and having found that, our duty is to follow it as far as it goes, and to stop where that stops—whatever may be the imperfections or difficulties which it leaves behind."
*Chan*, 490 U.S. at 135, 109 S.Ct. 1676 (quoting *The Amiable Isabella*, 19 U.S. (6 Wheat.) 1, 71, 5 L.Ed. 191 (1821)).

holding that "[b]oth precedent and reason counsel that courts refrain from altering even slightly the plain, unambiguous language of a treaty negotiated among diverse sovereign nations"); *see also Victoria Sales Corp. v. Emery Air Freight, Inc.,* 917 F.2d 705, 707 (2d Cir.1990) ("[W]hen the text of a treaty is clear, a court shall not, through interpretation, alter or amend the treaty.") (citing *Chan,* 490 U.S. 122, 109 S.Ct. 1676, 104 L.Ed.2d 113). Similarly, cases since *Maritime Insurance,* both within and without the Second Circuit, have almost unanimously rejected the *Republic National Bank* approach to Article 4 and declined to limit liability where the baggage check was incomplete. *See, e.g., Curtin,* 275 F.3d at 90 (missing baggage weight); *Cruz,* 193 F.3d at 529 (missing baggage weight and ticket number); *Spanner,* 177 F.3d at 1176 (missing baggage weight, ticket number, and Warsaw Convention notice); *Perri,* 104 F.Supp.2d at 167–68 (missing baggage weight); *Siben v. Am. Airlines, Inc.,* 913 F.Supp. 271, 277 (S.D.N.Y.1996) (missing baggage weight); *Tchokponhove,* 953 F.Supp. at 83 (missing baggage weight and ticket number). This Court is therefore mindful that "the language of the Convention is unyielding and we have no warrant to dispense with portions we might think purposeless," *Cruz,* 193 F.3d at 529, and declines to carve out an excuse for Air France not to comply with Article 4 whether or not Schopenhauer had actual notice of the potential applicability of the Warsaw Convention.

■ In its second supplemental brief, Air France continues to rely on the Limited Release tag as the baggage check, but under a slightly different argument. It now argues that the presence of a Warsaw Convention notice in the passenger ticket obviates the need for a Warsaw Convention notice in the baggage check—not because the passenger is not prejudiced by its absence, but because the text of Article 4(2) foresees the incorporation of the Warsaw Convention notice in the passenger ticket. Article 4(2), as quoted above, precludes the limitation of liability "if the baggage check (unless combined with or incorporated in the passenger ticket which complies with the provisions of Article 3, paragraph 1(c)) does not include the [Warsaw Convention] notice ...." Essentially, Air France suggests that this language means that if the Warsaw Convention notice is incorporated in the passenger ticket, it may be dispensed with in the baggage check.

The Court rejects this contention. It would have been quite simple for the Article to provide for the preclusion of limited liability "if the baggage check does not include the Warsaw Convention notice (unless the notice is combined with or incorporated in the passenger ticket)." Alternatively, the Article could have provided for the preclusion of liability "if the baggage check and passenger ticket, when combined, do not include the Warsaw Convention notice." But the plain language of the Article quite clearly speaks in terms of the *baggage check* being "combined with or incorporated in the passenger ticket." The French text of the Hague Protocol, which controls in case of inconsistency among the official languages, is if anything even more clearly phrased.[18]

---

**18.** The French version of Article 4(2) provides:

> Le bulletin des bagages fait foi, jusqu'à preuve contraire, de l'enregistrement des bagages et des conditions du contrat de transport. L'absence, l'irrégularité ou la perte du bulletin n'affecte ni l'existence ni la validité du contrat de transport, qui n'en

> sera pas moins soumis aux règles de la présente Convention. Toutefois, si le transporteur accepte la garde des bagages sans qu'un bulletin ait été delivré ou si, dans le cas où le bulletin n'est pas combiné avec un billet de passage conforme aux dispositions de l'article 3, alinéa 1 c, ou n'est pas inclus dans un tel billet, il ne comporte pas l'avis

Indeed, the opposite result would make little sense. Article 3, which governs the delivery of the passenger ticket, already requires in section 1(c) that the ticket include its own Warsaw Convention notice. Air France's suggestion that Article 4 requires a baggage check notice only if the passenger ticket does not contain one assumes either that Article 4(1)(c) is largely redundant of Article 3(1)(c), or that the drafters of the Convention expected noncompliance with Article 3. But there is no reason to make such a forced assumption: Article 4(2), by its plain terms, *avoids* unnecessary duplication by explicitly not requiring two Warsaw Convention notices on the same document in the case where the baggage check is incorporated into the passenger ticket.[19] The Court therefore declines to accept Air France's proposition that the Limited Release tag contained all of the necessary particulars required to invoke Article 22's limited liability provision, and hereby denies the motion for summary judgment insofar as it attempts to limit Air France's liability for baggage allegedly lost or damaged on the New York–Paris flight.

A third argument that Air France might have made, but did not—indeed that Air France specifically argues against in its effort to transform the meaning of Article 4—is that Schopenhauer received a satisfactory baggage check when he first received his tickets from Magical Holidays. In other words, Air France might have argued that the entire baggage check, rather than just the Warsaw Convention notice, was incorporated in the passenger ticket pursuant to Article 4(2), and thus sufficient to invoke Article 22. As discussed above, each of the passenger tickets in this case is printed on a form headed "Passenger Ticket and Baggage Check," and which apparently contains a Warsaw Convention notice on its reverse.[20] As such, once delivered each satisfies the liability limitation requirements of Article 3 (that a ticket have been delivered and that it contain a Warsaw Convention notice)

---

prescrit à l'alinéa 1 c du présent article, le transporteur n'aura pas le droit de se prévaloir des dispositions de l'article 22, alinéa 2.

The French text makes clear that the lack of a Warsaw Convention notice in the "bulletin des bagages," or baggage check, precludes limited liability only "dans le cas où le bulletin n'est pas combiné avec un billet de passage conforme aux dispositions de l'article 3, alinéa 1 c," or "in the case where the baggage check is not combined with a passenger ticket conforming to Article 3(1)(c)." *Collins Robert French–English English–French Dictionary.*

**19.** The only colorable support for Air France's interpretation comes from a district court case which Air France does not cite. In *Vekris,* 707 F.Supp. at 676 n. 9, the court found that a Warsaw Convention notice in the passenger ticket obviated the need to insert a similar notice in the baggage check. But *Vekris*'s usefulness as precedent is suspect for several reasons: First, it was decided before *Chan* and *Maritime Insurance* made clear that the Warsaw Convention was to be construed strictly and not functionally. Second, the

court in *Vekris* declined to limit liability in any case because the baggage check was also missing the baggage weight, and thus its observations regarding the Warsaw Convention notice were irrelevant to the holding. Finally, and most importantly, the *Vekris* court was interpreting Article 4 of the original Convention, which did not contain the current Convention's language that a baggage check "combined with or incorporated in" a valid passenger ticket could dispense with an additional notice.

**20.** No copy of the ticket for the New York–to–Paris flight has been presented in this matter. Air France suggests that a copy of the ticket may be available on microfilm, or that the original "may be stored in a warehouse somewhere near Paris." Def. Reply Mem. to Pl. Suppl. Mem. at 9. The Court at this time offers no opinion on how or whether Air France could prove that the New York–to–Paris ticket was essentially similar to the others tickets in the booklet.

and of Article 4 (that a baggage check have been delivered and that it contain a Warsaw Convention notice, or that it be incorporated in a passenger ticket containing a Warsaw Convention notice). Moreover, each "Passenger Ticket and Baggage Check" provides even those particulars listed in Articles 3 and 4 but not necessary in order to limit liability, to wit, an indication of the places of departure and destination or (for round trips) an international stopping point. Finally, the form also leaves space for certain baggage check particulars required by the old Warsaw Convention, but not by the current one: the place and date of issue and the number and weight of the bags.

Not only does the "Passenger Ticket and Baggage Check" document hold itself out as the document intended to satisfy both Articles 3 and 4, but Article 4 of the current Convention makes plain that the drafters of the Hague Protocol intended to permit air carriers to provide a combined document satisfying both articles. There is no other explanation for the provision of Article 4, discussed at length above but not present in the original Article 4, that the baggage check can be "combined with or incorporated in the passenger ticket."

The strongest argument against this proposition is that it is counterintuitive. In the words of Air France's brief, "To argue that the baggage check is combined into the passenger ticket departs from commonly accepted logic; that is, when one travels and purchases airline tickets from a travel agent; *via* the internet on a website; or from an air carrier directly by telephone, those entities do not know at that point whether or not the traveler will have luggage." Def. Reply Mem. to Pl. Suppl. Mem. at 2.

But the counterintuitiveness of this concept may spring from confusion of the different functions a baggage check is capable of fulfilling. One such function is as a document of title. It appears that the original Warsaw Convention envisioned such a role for the baggage check, hence its requirement in the old Article 4(3)(e) that the baggage check contain a "statement that delivery of the baggage will be made to the bearer of the baggage check." But the Hague Protocol revisions, in envisioning a combined document of carriage, dispensed with that requirement. Moreover, the Hague revisions dispensed with the requirement that the baggage check contain *any* particulars which might be useful in a document of title, such as the number and weight of the bags.

At the same time, air carriers now employ various other documents which are capable of serving as documents of title: these appear in various forms and bear names such as "baggage claim," "claim check," or "baggage tag." Some go so far as to proclaim that they are specifically *not* baggage checks within the meaning of the Warsaw Convention. For example, the "baggage identification tag" given to the plaintiff in *Tchokponhove*, which the court in that case found insufficient under the old Article 4, stated on its back:

> BAGGAGE IDENTIFICATION TAG ONLY
>
> Carrier will not be liable for baggage not claimed immediately upon arrival. This is not the luggage ticket (baggage check) described in Article 4 of the Warsaw Convention or the Warsaw Convention as amended by the Hague Protocol, 1955. Baggage checked subject to tarriffs [sic], including limitations of liabylity [sic], therein contained.

*Tchokponhove*, 953 F.Supp. at 81 (alterations in original).[21] Such documents ought

---

**21.** *See also* Paul Fussell, *Abroad: British Literary Traveling Between the Wars* (1980), at 45:

In addition to the incomprehensible but clearly crucial airport loudspeaker harangues, the tourist is faced by constant

not be confused with the baggage check; in the words of a leading authority on the Warsaw Convention:

> Combined documents of carriage are commonly used in modern day air transportation .... [A]s a result one of the essential characteristics of the baggage check, i.e. its title evidencing function, has been shifted to the claim check, one section of which is attached to the baggage and the other to the ticket (this section is sometimes referred to as the 'baggage coupon'). The baggage check must not be confused either with the claim check which is issued for each piece of baggage and serves as a counterfoil when the baggage is collected, or with the baggage tag which is attached to the suitcase (or other item of baggage) and merely indicates the place of destination.

W. Müller–Rostin, *Warsaw Convention* (E. Giemulla & R. Schmid, eds.2002), Art. 4 commentary at 2–3.

Given the novelty of the Hague revisions in this country, it is not surprising that both of the parties here and most of the relevant caselaw make little effort to distinguish the Warsaw Convention "baggage check" from the various other documents associated with checked baggage. Air France's papers in this case refer interchangeably to the "baggage check," "baggage claim check," "claim check," and "baggage identification tag." Earlier caselaw similarly scrutinized a variety of documents for the required baggage check particulars. *See, e.g., Cruz*, 193 F.3d at 527–28 (analyzing particulars omitted from a "baggage claim stub," also referred to as a "luggage ticket"); *Republic Nat'l Bank*, 815 F.2d at 236 (analyzing the particulars on the "claim check"); *Tchokponhove*, 953 F.Supp. at 81 ("baggage identification tag"); *Siben*, 913 F.Supp. at 275 ("claim checks"); *Chukwuma v. Groupe Air Fr., Inc.*, 767 F.Supp. 43, 44 (S.D.N.Y.1991) (no proper "baggage check" for a third item even though the first two items were listed on a "Passenger Coupon and Baggage Check"); *Vekris v. Peoples Express Airlines, Inc.*, 707 F.Supp. 675, 675 (S.D.N.Y. Aug.25, 1988) ("baggage claim stub," also described as the "claim check"); *Gill*, 620 F.Supp. at 1453 ("claim check"). Yet many other cases have taken note of the production and use of combined documents by the airline industry. *See, e.g., Spanner*, 177 F.3d at 1174 (finding that the requisite particulars were not included either on the "claim checks" or on the "ticket called a 'Plane Ticket and Baggage Check'"); *Seth v. British Overseas Airways Corp.*, 329 F.2d 302, 306 n. 4 (1st Cir.1964) (noting no objection to the incorporation of the baggage check into the ticket); *Ijedinma*, 2001 WL 803745, at *2 ("Plaintiff does not dispute that she was issued a unified 'passenger ticket and baggage check' which by definition included the number of the passenger ticket, and three baggage claim tags displaying the number of bags checked."); *Da Rosa v. Tap Air Port.*, 796 F.Supp. 1508, 1509 n. 3 (S.D.Fla.1992)

---

rhetorical and contractual challenges. He meets one the moments he accepts the standard airline baggage check and reads, "This is not the Luggage Ticket (Baggage Check) as described in Article 4 of the Warsaw Convention or the Warsaw Convention as amended by the Hague Protocol 1955." The question arises, if this baggage check is not that one, what is it? If it is not that Luggage Ticket (Baggage Check), how do you get the real one? And what does the real one say when you finally get it? Does it say, "This is the Luggage Ticket (Baggage Check) as described in, etc.?" "On no account accept any substitute." Or "Persons accepting substitutes for the Luggage Ticket (Baggage Check) as described in Article 4 ... will legally and morally have no recourse when their baggage is diverted (lost), and in addition will be liable to severe penalties, including immediate involuntary repatriation at their own expense."

("Although [the original] Article 4 requires this information to be printed on the 'baggage check,' the baggage check can be incorporated into the passenger ticket, as occurred in the instant case."); *Maghsoudi*, 470 F.Supp. at 1276 (analyzing the particulars on the combined "ticket and baggage check"); *Hill*, 425 N.Y.S.2d at 715 ("The combined 'Passenger Ticket and Baggage Check' issued by defendant is in evidence. It provides space for recording the weight and number of pieces of checked and unchecked baggage. But nothing appears in that space."); *id.* at 716 ("Nor is any argument advanced that some other document which satisfies article 4 ... is in fact the baggage check."). *Cf. Perri*, 104 F.Supp.2d at 166 ("The ticket agents did not write the weight of plaintiff's luggage directly on her claim stubs or on her passenger ticket, a practice that Delta admits was 'routine check-in procedure[ ].' ") (alteration in original).

While the text of the current Convention does not preclude the baggage check from serving as a document of title,[22] it does provide at least one other function: Article 4(2) states that the baggage check "shall constitute *prima facie* evidence of the registration of the baggage and of the conditions of the contract of carriage." *See also* Müller–Rostin, Art. 4 commentary at 10 ("[I]n contrast to the unamended Convention the [Hague Protocol] clearly defines the baggage check as a *document of evidence.*"). The idea that the baggage check is intended as evidence of the conditions of contract squares well with the limited number of particulars currently required: 1) the places of departure and destination, and for round trips an international stopping point; and 2) the Warsaw Convention notice. The first requirement serves to indicate whether the flight is an international one, which in turn indicates whether the Warsaw Convention applies in the first place. The second requirement gives notice of that fact to the passenger. And because both of these requirements are available once the ticket reservation is made, there is no reason to assume that a baggage check cannot be delivered along with the passenger ticket, long before the passenger arrives with his baggage at the airport.[23]

The Court notes that this understanding of the combined passenger ticket and baggage check is evident in cases from Canada and the United Kingdom, which have been party to the Hague Protocol since 1964 and 1967, respectively. *See, e.g., Friesen v. Air Can.*, 30 A.R. 527, 536 (Alta.Q.B.1981) (holding that "the ticket which [plaintiff] received from [the travel agent] was a passenger ticket and baggage

---

**22.** Air France's ticket jacket suggests that the baggage check may serve as a document of title as well. *See* Def. Reply Mem. to Pl. Suppl. Mem. Ex. A (third unnumbered page of ticket jacket) ("Checked baggage will be delivered to the bearer of the baggage check.").

**23.** Some confusion is raised by the provision of Article 4(2) that the baggage check shall also serve as *"prima facie* evidence of the registration of the baggage." At least one (dissenting) judge has taken the opinion that this language suggests that a baggage check cannot come into existence before baggage is presented for checking at the airport. *See Collins v. British Airways Bd.*, [1982] Q.B.

734, 758 (Eng.C.A.1981) (Kerr, L.J., dissenting). This Court is inclined to agree with those authorities taking the opposite view, however. *See, e.g., Collins*, [1982] Q.B. at 741, 746 (opinions of Denning, M.R., and Eveleigh, L.J.) (excerpted further in *infra* note 24); Peter Martin et al., *Shawcross & Beaumont: Air Law* (4th ed.1996), at ch. VII, para. 168 (preferring the majority view in *Collins*). Even if the baggage check is intended to serve as evidence of checking of bags, failure to enter data not required by Article 4 cannot transform an otherwise valid baggage check into something else, nor can it preclude the limited liability available to air carriers delivering baggage checks containing all of the particulars required in Article 4.

check. This is indicated clearly on the front of the ticket and is also set out in the definition of ticket in the Conditions of Contract. This ticket satisfies the requirements of Article 3, and the defendants are therefore under the terms of Articles 3 and 4 entitled to avail themselves of the provisions of Article 22").[24]

24. A similar interpretation of the Convention was issued more recently in *Campagnaro v. Canadian Airlines International Limited*, 26 A.C.W.S. (3d) 623, 1991 A.C.W.S.J. LEXIS 31258 (Ont.Ct.1991). The plaintiff in *Campagnaro* sued for the value of clothing stolen after the flight attendant persuaded her to store it in the closet at the front of the plane rather that in the overhead compartment. The Court found that Canadian Airlines could limit its liability:

> Counsel for the plaintiff argues that when [the flight attendant] took charge of the garment bag on behalf of Canadian, Canadian lost the protection of ... Article IV(2) because he took charge of that piece of baggage without delivering to Campagnaro a baggage check. I do not read ... Article IV(2) to mean that the baggage check must be turned over to the passenger at the time the passenger's baggage is put in charge of the carrier. Rather, s.2 provides for the baggage check being combined with or being incorporated in the passenger ticket. When that is done, the ticket and baggage check will often be turned over to the passenger days before the passenger places his baggage in charge of the carrier. The section seems to be concerned that the passenger be alerted that the carrier's liability is limited so far as the baggage is concerned at or before the time the carrier takes charge of the baggage. In this case the carrier combined the passenger ticket and baggage check, and the combination complies with Article 3 paragraph (1)(c) of the [Convention] by pointing out the fact of limited liability for death, injury, or loss or damage to baggage.

*Campagnaro*, 1991 A.C.W.S.J. LEXIS 31258 at *8–*9.

The role of the baggage check was discussed at even greater length by all three judges in *Collins*, [1982] Q.B. 734. Plaintiffs in *Collins*, arriving late for their flight, had no time to check their bags before boarding the plane, and so left the bags with a British Airways clerk who indicated he would send them on a later flight. Of course the bags arrived ransacked. *Id.* at 742. Because they had not received a separate baggage check beforehand, plaintiffs attempted to preclude British Airways from limiting its liability. Lord Denning identified the issues thus:

> When you travel by air to a foreign country and your baggage is lost or damaged, what compensation can you recover from the airlines? .... It depends on the terms of the ticket .... You have your ticket beforehand. It is described as "Passenger ticket & baggage check." It has tear-off strips for the stages of the journey. You go to the reception desk with your baggage. You keep your hand luggage to take with you on the aircraft. You put the heavier baggage on to the weighing machine. The young lady fastens the baggage tags on to the pieces and clips the corresponding tags on to your ticket. They go off down the conveyor belt. (You do not see your baggage again until you retrieve it, if you are lucky, at your destination.) The young lady hands you back your ticket with the tags clipped on it. Off you go to wait for the time when your flight is called. She may, or may not, have written anything on to your ticket, but you do not read it at that time. You probably do not read it at all, unless you do so on the aircraft for want of anything better to do.

*Id.* at 741. To the question how one could receive a baggage check before actually checking baggage, Lord Denning stated:

> There is an amazing omission in the Warsaw Convention. It is this: The Convention talks a lot about "registered baggage," but it never tells us what "registered" means: nor what "registration" entails .... Take one phrase in article 4(2): "The baggage check shall constitute prima facie evidence of the registration of the baggage and of the conditions of the contract of carriage."
>
> What does that mean? You cannot know unless you know what "registration" means and what it entails .... Seeing that the Convention contains no explanation of "register" or "registration," I will say what I think it means. In ordinary speech "register" is a book which contains a list of persons or things of which it is important to keep a record. Entries in it are made by a person who is authorized to keep the list .... The earliest use that I know of is the "register of writs" registrum brevium. But I remember well the school "register"

which was kept by the master, and you had to answer to your name.

. . . . .

The only explanation of the omission that I can offer is that, when the Warsaw Convention was first drafted, the draftsmen expected that every airline would keep a register of all baggage which they accepted for carriage. The airline would have a book in which they entered the number of pieces and their weight. That entry would be the "registration." On the baggage being "registered," the airline would hand to the passenger a "baggage ticket" (called in America a "baggage check") as evidence that it had been registered.

But the plain fact is that the expectations of the draftsmen were never realised. No airline ever keeps a "register" of luggage which they accept for carriage. No luggage is ever "registered" in a book. No "registration" is ever made of any luggage. Yet no amendment has been made to the articles of the Convention.

In these circumstances, it is entirely inappropriate nowadays for the Convention to keep the words "registered" or "registration" in the articles. What then are we to do? The only solution that I can see is to strike out the words "registered" and "registration" wherever they occur in the articles. By doing this, you will find that all the articles work perfectly, except that you have to find out what is a "baggage check."

Take article 4(2), which says: "The baggage check shall constitute prima facie evidence of the registration of the baggage and of the conditions of the contract of carriage." . . . The phrase "baggage check" is quite intelligible in cases where there is a system of registration of baggage. It is the voucher which evidences the registration in the register. But, when there is no system of registration, it cannot be a voucher of registration.

To my mind the standard form of air ticket shows us what a "baggage check" is. The ticket itself is a combined "passenger ticket & baggage check." The "baggage check" is the tiny little part of it commencing with "baggage check" in small letters, with little boxes to be filled in. If filled in, it will be evidence of receipt of the baggage by the airline. But, even if it is not filled in, it has no effect on the conditions of carriage. That is shown by article 4(2), which says: ". . . The absence, irregularity or loss of the baggage check does not affect the existence or the validity of the contract of

carriage which shall, nonetheless, be subject to the rules of this Convention."

Applying that principle, it seems to me that a mistake in filling in the baggage check is an "irregularity." To insert a wrong number or weight is also an "irregularity." To insert a figure which is undecipherable is also an "irregularity." To insert no figure, but only a tick would be an "irregularity." Hence it follows that, to insert nothing, would also be an "irregularity."

So I hold that the "baggage check" is the little part of the ticket designated as the baggage check. Even if it is not filled in, it is still a "baggage check" within the Warsaw Convention. It satisfies the Convention so long as it contains the statements mentioned in article 4(1)(a), (b) and (c). This combined passenger ticket and baggage check did so.

. . . . .

In my opinion, every airline which issues the standard form of "passenger ticket & baggage check" for international carriage has the benefit of the limitation of liability under the Warsaw Convention, even though nothing is filled in in the "baggage check."

*Id.* at 742–45 (headings omitted).

Lord Eveleigh reached the same conclusion in less colorful language:

The question, therefore, is: did the carrier take charge of the baggage without a baggage check having been delivered? A check is the means of checking, regulating or controlling something. In the present case that something is baggage. It may be incorporated with the passenger ticket and it must contain three pieces of information set out in article 4—alternatively article 3—of the Convention. For the purpose of the Convention, therefore, I conclude that a baggage check is a written instrument providing means for checking, regulating or controlling the carriage of baggage. Although it may, depending on its contents, provide evidence of the receipt of baggage, it is not itself simply a receipt. It is something issued, to use the words of article 4, "In respect of the carriage of registered baggage" and entitles the passenger to have X pounds of baggage taken in charge and carried on the route designated in the document. It has space not only for the number of pieces and the weight, but also for any additional endorsements. In this respect it has similarities to a waybill. Such a document does not fail to live up to its description because it has not yet been used for its

## III. Conclusion

In view of the fact that both parties have litigated the instant motion under the theory that the Limited Release tag constituted the baggage check delivered to Schopenhauer in respect of the sixth bag, the Court does not find it appropriate to grant summary judgment on an alternative theory, especially a theory rejected by Air France. Air France remains free to prove, if it can, that it in fact issued a document pursuant to Article 4 that permits it to invoke the limited liability provision of Article 22.

For the above reasons the Court GRANTS the motion for summary judgment insofar as it seeks to limit Air France's liability to $20 per kilogram for the luggage allegedly lost or damaged on the Paris–to–Benin flight, and DENIES the motion for summary judgment insofar as it seeks to dismiss that part of Schopenhauer's claim for lack of jurisdiction, and further DENIES the motion insofar as it seeks to limit Air France's liability for the New York–to–Paris flight. The case will proceed to trial on May 27, 2003.

SO ORDERED.

intended purpose and has not yet had entered upon it all the information which it is designed to record. In my opinion, therefore, a baggage check which was incorporated in a passenger ticket was delivered to the plaintiffs in respect of the carriage of registered baggage and that baggage check contained the mandatory information required by the Convention. Accordingly the limitation of liability applies.
*Id.* at 746–47.